VIRGINIA BELLE ALMOND, Respondent, v. MODERN WOODMEN OF AMERICA, Appellant.

**Kansas City Court of Appeals, October 5, 1908.**

1. **BENEFIT SOCIETIES: Proofs of Loss: Prima-Facie Evidence: Suicide.** Proofs of loss furnished by a plaintiff are prima-facie evidence of the facts therein stated and become conclusive evidence as to suicide unless shown to have been error by reason of mistake or misapprehension.

2. **———: Prima-Facie Evidence: Suicide.** The evidence relating to the death of a member of a benefit society is reviewed and analyzed and held not sufficiently clear to take the case from the jury on the ground of suicide, since the presumption is against suicide and being circumstantial does not preclude death by apoplexy or other causes.

3. **———: Intemperance: Evidence: Jury: Appellate Practice.** The question of intemperance having been decided by the jury on conflicting evidence is closed in the appellate court.

4. **TRIAL AND APPELLATE PRACTICE: Motion for New Trial.** Matters not called to attention of the lower court in motion for new trial cannot be considered on appeal.

5. **TRIAL PRACTICE: Misconduct of Counsel: Withdrawal of Evidence: Error Cured.** Where counsel is unfortunate in his comment upon the evidence and on objection and suggestion from the court withdraws the whole evidence in his remarks from the consideration of the jury, the error is cured.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED.

*Benj. D. Smith* and *John Sullivan* for appellant.

(1)   Proofs of death are admissible in evidence and are prima-facie proof of the facts stated therein against the beneficiary and on behalf of the society, the same being admissions by her.   Insurance Co. v. Newton, 22 Wall. 32; Benefit Assn. v. Sargent, 142 U. S. 691; Hassencamp v. Insurance Co. (C. C. A.), 120 Fed. 475; Walther v. Insurance Co., 4 Pac. (Cal.) 413; Modern Woodmen of Am. v. VonWald, 49 Pac. (Kan.) 782. (2)   Where, as in this case, the uncontradicted and overwhelming weight of evidence shows the fact that Almond suicided, it was the duty of the trial court to direct a verdict for the defendant, and the court erred in not so directing the jury, and the appellate court will, on appeal, reverse the judgment.   Reichenbach v. Ellerbe, 115 Mo. 588, and cases therein cited. (3)   It is not sufficient for the court to have stated in the presence of the jury that they should not regard an improper statement made by counsel, but it is necessary that the court shall administer a rebuke so strongly as to offset the probable effect of such remarks, and failure to have so rebuked counsel is reversible error.   Killoren v. Dunn, 68 Mo. App. 212; Roeder v. Studt, 12 Mo. App. 566; Smith v. Telegraph Co., 55 Mo. App. 626; Marvel v. Walters, 19 Mo. App. 134.   (4)   The court's instruction to the jury as to what was necessary to constitute "intemperate use of alcoholic drinks" was erroneous.   The word "intemperate" means any immoderate or excessive use of intoxicating liquors.   The instruction, as given by the court, was far too broad to come within a reasonable definition of the term.   Beller v. Knights of Pythias, 66 Mo. App. 499; Zeigler v. Commonwealth, 14 Atl. (Pa.) 237; Miller v. Insurance Co., 31 Ia. 216, 7 Am. Rep. 122, 34 Ia. 222; Insurance Co. v. Davey, 123 U. S. 739, 31 L. Ed. 315; Insurance Co. v. Ward,

140 U. S. 76, 35 L. Ed. 371; Marcoux v. Society, 39 Atl. (Me.) 1027; Mullinix v. People, 76 Ill. 211.

*Jno. I. Williamson* for respondent; *James Fairweather* of counsel.

(1) The admission by respondent in the proofs of death is prima-facie evidence only. 2 Bacon on Benefit Society (3 Ed.), sec. 471; Keels v. Mutual Reserve, etc., 29 Fed. 198. (2) The verdict of the jury is supported by substantial evidence, and in such case this court will not undertake to weigh the evidence. Lehnick v. Railroad, 118 Mo. App. 616; Crossan v. Crossan, 169 Mo. 637; State v. Gleason, 172 Mo. 259; State v. Jacobs, 152 Mo. 565; Hunt v. Ancient Order of Pyramids, 105 Mo. App. 41; Boynton v. Insurance Co., 51 L. R. A. 687; Shotliff v. Modern Woodmen of America, 100 Mo. App. 143. (3) The alleged prejudicial remarks of counsel are not before the court. Glasgow v. Railroad, 191 Mo. 376; Champagne v. Hamey, 189 Mo. 709; State v. McCarver, 194 Mo. 717; State v. Valle, 196 Mo. 29. (4) Appellant waived all objections to the instruction. Fullerton v. Carpenter, 97 Mo. App. 201; State v. Nelson, 101 Mo. 477; State to use v. Fargo, 151 Mo. 285; Bradley v. Connolley, 52 Mo. 19; Brown v. Mays, 80 Mo. App. 81; Roberts v. Boulton, 56 Mo. App. 405. (5) There was no error committed in the admission of evidence concerning the characteristics of the deceased. Gillett on Indirect and Collateral Evidence (1 Ed.), sec. 213, p. 226.

BROADDUS, P. J.—This is a suit to recover $2,000 on a benefit certificate issued by the defendant, to one Henry Betts Almond, on the 2d day of April, 1904, in which the plaintiff was the beneficiary. The petition is predicated upon the theory that defendant is a life insurance company under the laws of Missouri, but the court very properly held that it was not such

and tried the case upon the theory that it was a fraternal beneficiary society organized under the laws of the State of Illinois.

The defendant pleaded two defenses, viz.: That the deceased member committed suicide and that he was intemperate in the use of alcohol. The certificate provided that the defendant did not indemnify the member against death from suicide "sane or insane, if occurring within three years from date of certificate or from death resulting from occupations prohibited by law." There is a by-law of the society which provided that if any of its members "shall become intemperate in the use of alcoholic drinks, or in the use of drugs or narcotics, the benefit certificate held by said neighbor shall by such acts become and be absolutely null and void as to the benefits, and all payments thereunder shall be forfeited." By the terms of the benefit certificate said by-law became a part of the contract of indemnity. There was no dispute as to the death of the member, but the contest was over the affirmative defenses set up by defendant.

The defendant introduced in evidence in support of its defense the proof made by the plaintiff of the death of the said Almond. As the defendant places much stress upon this document we quote from it that part which bears directly on the controversy, viz.: "I, Virginia Belle Almond, being first duly sworn, on oath state that I am the beneficiary named and referred to in the benefit certificate . . . issued to Henry B. Almond, deceased . . . whose death resulted from morphine poisoning . . ." The evidence of the coroner, Dr. Thompson, was in effect that he found no evidence by external examination of deceased's body of the cause of his death; that death by morphine poison did not manifest such as the cause by the mere external appearance of the body; that he found in deceased's room

a bottle that had contained twenty-five quarter grains of morphine, that the vial was empty with the exception of one quarter grain; and that he also found a note on the dresser. The doctor's opinion from what he saw, and not from the appearance of the deceased was that his death might have been produced by morphine poisoning. The defendant introduced much evidence to the effect that deceased a short time before his death contemplated suicide, by threatening to take poison; and that he was intemperate in the use of drugs and alcoholic drinks.

One witness stated, that the night Almond died he showed him a little bottle of morphine and asked him if he had any objections to his going that route; and that he had told him something similar before. Another witness testified on the night he, Almond, died, that at two-thirty o'clock the deceased called him up over the telephone, and said: "He was in bed and had made up his mind to end it." And that he afterwards called him up and said, "after laughing and carrying on with a lot of nonsense that he meant it." The woman who kept the rooming house where he died heard deceased take off his shoes and afterwards walk the floor for hours. A saloonkeeper testified that he loaned deceased money; that he was financially embarrased, and that he told him he was tired of life and intended to end it; and that he heard him make several similar statements during the month in which he died. Another saloonkeeper testified that about midnight previous to the night he died, the deceased was in his saloon and took several drinks and before he left he said to him; "Well, Roy, I am going to leave you to-night," and afterwards said, "Good by;" after which he took another drink and then took out a vial and showed it to him, whereupon the witness snatched it from him and threw it into the waste basket. During the conversation the witness got his gun and said to deceased: "Wait a minute I'll help

you, here take this and go back in the toilet. Blow your head off, if you want to go that way." The deceased answered: "No, I've got something bettern that." It was then he exhibited the vial. There was other evidence of a similar character. There was much evidence to the effect that deceased was addicted to the habit of excessive drinking of alcoholic drinks. The note that was found at the room of the deceased by the coroner upon which there was some writing, was not given in evidence.

The evidence of the wife of the deceased was that the marital relations were pleasant and that she never knew him to be intoxicated with liquor. There was other evidence tending to show that deceased was not in the habit of becoming intoxicated with liquor. It was shown that deceased was in the habit of making statements diametrically opposed to the facts; that he would say that he was without money when he had it; and would make assertions of the most serious import in a jesting manner. Witnesses were permitted to state that when he made threats of committing suicide they did not believe he was in earnest because of this disposition to say things that he did not mean and to joke about matters of serious import. Dr. Thompson gave it as his opinion that the deceased might also have come to his death by valvular disease of the heart, by angina pectoris, or by apoplexy.

The judgment was for the plaintiff, from which defendant appealed. The principal error assigned for reversal is, that the court committed error, in refusing to instruct the jury on the evidence to return a verdict for the defendant as requested. The position of defendant is that the proofs of loss furnished by the plaintiff are prima-facie evidence of the facts therein stated. And it has been so held. [Insurance Co. v. Newton, 22 Wallace 32.] And that such proof is conclusive "including the fact of suicide, unless the plaintiff shows that the

statements made were erroneous, or were given through mistake or misapprehension." Hassencamp v. Insurance Co., 120 Fed. 475, and other cases are to the same effect.

Applying the rule as thus stated the proofs of loss furnished by the plaintiff are conclusive upon her of the fact that her husband died as the result of morphine poisoning unless it was shown to have been an error, but not that he committed suicide, for there is no recitation to that effect in the proofs of loss. Therefore the plaintiff was not called upon to rebut any prima-facie case she had made against herself that the insured's death was the result of suicide. Admitting that plaintiff failed to rebut the presumption that the insured died by morphine poisoning, the defendant was required to prove to the satisfaction of the jury that the insured took the drug to end his life.

We have stated some of the evidence and otherwise given the general import of the remainder, that defendant introduced for the purpose of showing that the indemnity was forefeited by the act of the insured in committing suicide. The evidence in that respect was strong and in questions of ordinary life would be accepted as proof of the disputed facts. But the question here is not one of ordinary occurrence nor should it be determined by the ordinary standards we usually apply to such cases. The presumption of law is against suicide. It is said that when a man is charged with crime, the law presumes that he is innocent, unless proven guilty beyond a reasonable doubt. Can the presumption in such instances be greater than it should be that a man has been guilty of self-murder? We think not. The natural instinct is to recoil from death. Self-preservation is the first and most compelling instinct of man. And to overcome the natural presumption against suicide there should be a great preponderance of evidence.

The defendant seeks to apply the rule adopted in Reichenbach v. Ellerbe, 115 Mo. 580, where the question was whether the deceased had forfeited his membership by the failure to pay his dues. It was held that as the uncontradicted and unimpeached evidence showed that he had done so, the court committed error in not directing a verdict for the defendant. For the reason given we do not think the decision has any application to the question.

The evidence in this case was purely circumstantial. It consisted mainly as we have seen in the fact that a vial was found with the deceased which had contained morphine sufficient to have caused his death, and his previous and repeated threats to end his life. So much stands uncontradicted. We must then assume because of the threats and the taking of morphine he committed suicide before defendant was entitled to a direction from the court to the jury to return a verdict to that effect. We must assume that the deceased took the drug for the purpose of ending his life and to reject every other reasonable supposition that such was not his purpose. The deceased may have taken the drug for the purpose of throwing off the depression under which he was laboring and took too much by mistake. This is not a farfetched supposition for such instances are not uncommon. Or he may have been suffering from valvular disease of the heart or angina pectoris, as Dr. Thompson stated, or he may have taken it for the purpose of inducing sleep, which from the statement of his landlady that he walked the floor for hours, he was not able to obtain, and took by mistake an over quantity. The evidence furnished by Dr. Thompson tends to rebut the prima-facie case in behalf of defendant implied by the statement in plaintiff's proof of loss that the deceased died from the effects of morphine poisoning. The doctor assumed from what he saw surrounding the deceased that he had been poisoned

by morphine, but he also stated that from the appearance of the body itself one of three things might have caused his death, viz: apoplexy, angina pectoris, and valvular disease of the heart; and further that there was nothing to indicate in the appearance of his body that he had died from morphine poisoning.    In view of all the facts, the evidence being circumstantial, there was not such a clear case of suicide made out as would have justified the court in granting defendant's peremptory request to return a verdict against plaintiff.

The evidence greatly preponderated in favor of defendant, that the deceased had forfeited his membership by the intemperate use of drugs and alcoholic drinks. But as there was evidence to the contrary, the matter so far as we are concerned was solely one for the jury.

The defendant assigns as error the action of the court in rejecting the admission of competent testimony offered on its part, and the giving of a certain instruction at the instance of plaintiff.   But as the attention of the trial court was not called to these matters in defendant's motion for a new trial, they cannot be considered.

Also objection is made to certain unbecoming remarks of plaintiff's counsel in the presence and hearing of the jury.    The words used had reference to certain testimony introduced on the trial.    When objection was made to the language of the counsel, the court said, "I wish you gentlemen had moved to strike out that testimony when it was offered."    Counsel for plaintiff then said, "If there is any question about that, I will withdraw everything."    The court then struck out all the testimony upon which the remarks were based. Whereupon plaintiff's counsel withdrew what he had said about the matter.    If there is blame to be attached to any one, it must rest with the defendant's counsel for failure to object to the testimony which insti-

gated the plaintiff's counsel to use the objectionable language.

Finding no error in the trial, the cause is affirmed.