# W. C. EVANS, Respondent, v. MODERN WOODMEN OF AMERICA, Appellant.

**St. Louis Court of Appeals. Argued and Submitted February 7, 1910. Opinion Filed February 21, 1910.**

1. **FRATERNAL BENEFICIARY ASSOCIATIONS: Action on Certificate: Defenses.** Mutual benefit insurance societies are not subject to the Missouri laws regulating defenses by old-line companies, and are entitled to the application of the doctrine of representations and warranties in all its rigors of interpretation as a defense to an action on their certificates.

2. ————: ————: ————: **Age of Insured: Misstatement in Proof of Loss: Explanation: Question for Jury.** In an action on a mutual benefit certificate, it was shown the beneficiary stated in the proofs of death that insured was born on December 22, 1880, whereas his application for membership stated he was born on December 22, 1881.. The beneficiary testified that "he couldn't be positive as to the date of birth of insured, he had made no inquiry to ascertain it and had no means of knowing except from memory." *Held*, there was enough before the jury, taking into consideration the application of insured and the testimony of the beneficiary, to warrant them in determining whether or not a misstatement as to his age had been made by insured in his application, the real fact to determine being the age of insured, not what someone else, even the beneficiary, may have said about it.

3. ————: ————: **Forfeiture of Membership: Uncontradicted Evidence: Directing Verdict.** In an action on a mutual benefit certificate, where the uncontroverted evidence shows a forfeiture of membership, it is the duty of the trial court to direct a verdict for defendant.

4. ————: ————: **Intemperance of Insured: Intoxication at Time of Death: Question for Jury.** In an action on a mutual benefit certificate, whether the certificate was void by reason of the alleged intoxication of insured at the time of his death and by reason of his alleged intemperance during the time he was insured, was for the jury to determine, the evidence being conflicting.

5. ————: ————: ————: **Construction of Certificate: "Intemperate" Defined.** Where a mutual benefit certificate provided for forfeiture in case insured should become intemperate in the

Evans v. Modern Woodmen.

use of intoxicating liquors, the word "intemperate" should be held to mean not the excessive or habitual use of intoxicating liquors, but the habitually excessive use thereof.

6. ———: ———: ———: ———: **Failure of Local Camp to Prefer Charges: Evidence.** Where, in an action on a mutual benefit certificate, defendant claimed that insured was intoxicated at the time he was killed and that he was intemperate in the use of liquors, in violation of the policy, evidence that at no time had insured been tried by his local camp for intemperance or any other offense was incompetent.

Appeal from St. Francois Circuit Court.—*Hon. Chas. A. Killian,* Judge.

AFFIRMED.

*Benj. D. Smith* and *Benj. H. Marbury* for appellant.

(1) The contract herein sued on is a contract between the member and the society and includes the application, the certificate and the constitution and bylaws of the defendant. 3 Am. and Eng. Ency., of Law, Vol. III, (2 Ed.), p. 108, and cases cited therein; Bacon on Benefit Societies, secs. 37, 91, 116; Niblack on Benefit Societies, sec. 136. (2) A warranty is a stipulation inserted in writing on the face of the policy, on the literal truth or fulfillment of which the validity of the entire contract depends. The stipulation is considered to be on the face of the policy, although it may be written in the margin or transversely, or on a subjoined paper, referred to in the policy. Angell on Insurance, sec. 140; Bacon on Benefit Societies, sec. 194; 3 Cooley's Briefs on the Law of Insurance, p. 1932; Joyce on Insurance, sec. 1944; Bliss on Life Insurance, sec. 45; May on Insurance, sec. 156, and authorities cited in above texts. (3) The answers in the application for the benefit certificate herein sued on are warranties. McDermott v. Modern Woodmen of America, 97 Mo. App. 636, 71 S. W. 833; Finch v. Modern Woodmen of America, 113 Mich. 646,

71 N. W. 1104; Genrow v. Modern Woodmen of America, 114 N. W. 1009; Bumgart v. Modern Woodmen of America (Wis.), 55 N. W. 713; Modern Woodmen of America v. Von Wald (Kan.), 49 p. 782. (4) As a warranty is in the nature of a condition precedent to the validity of a policy, and must be literally true, if the fact warranted is not true, there is a breach of warranty. It follows as a matter of course, that a breach of warranty will avoid the policy. This principle is so fundamental that it scarcely needs the citation of authorities to support it. 3 Cooley's Briefs on the Law of Insurance, p. 1950, and cases cited. (5) In view of the general principle that the materiality of the fact is wholly unessential in the case of a warranty, it is readily deduced that where there is a breach of warranty the policy is avoided, though the statement on which the breach is predicated is in no way material to the risk. 3 Cooley's Briefs on the Law of Insurance, p. 1951; 3 Joyce on Insurance, sec. 1962; McDermott v. Modern Woodmen of America, 71 S. W. 833; Beard v. Royal Neighbors of America, 89 Pac. 83. (6) If an answer which the applicant warrants is literally true is false the contract is annulled, whether the false statement was fraudulently or innocently made. 3 Joyce on Insurance, sec. 1964; May on Insurance, sec. 156; 1 Bacon on Benefit Societies, sec. 197; 3 Cooley's Briefs on the Law of Insurance, p. 1954; McDermott v. Modern Woodmen of America, 71 S. W. 833; Modern Woodmen of America v. Von Wald, 49 Pac. 782. (7) Proofs of death furnished to the Society are prima-facie evidence of the facts therein stated and are conclusive unless the beneficiaries show that the statements made therein were erroneous or were given through mistake. Almond v. Modern Woodmen of America, 113 S. W. 695; Insurance Co. v. Newton, 22 Wall. 32; Hassencamp v. Life Ins. Co., 120 Fed. 475; Hanna v. Life Ins. Co., 44 N. E. 1099; Walther v. Insurance Co., 4 Pac. 413; Modern Woodmen of America v. Von Wald, 49 Pac. 782; Hart

v. Trustees, etc., 84 N. W. 851; 3 Elliott on Evidence, sec. 2387; 2 Wigmore on Evidence, p. 1265. (8) Where as in this case the admission contained in the proofs of death, which was not shown on the trial of the case to have been erroneous or to have been given through mistake, showed that Evans was born on the 22d day of December, 1880, instead of the 22d day of December, 1881, as warranted in his application for membership, it became the duty of the trial court to direct a verdict for the defendant on the ground that, under the terms of the contract sued on, there was a fatal breach of warranty; the court having refused to so direct the jury, the Appellate Court will on appeal reverse the judgment. Reichenbach v. Ellerbe, 115 Mo. 588, and cases cited therein; Lavin v. Grand Lodge, 104 Mo. App. 1; Carroll v. Rapid Transit Co., 107 Mo. 653. (9) If but one natural and rational inference can be drawn from the undisputed facts, it is the duty of the Court to treat the matter in question as one of law and direct the proper verdict. Hardinger v. Modern Brotherhood, 103 N. W. 74; Somerville v. Knights Templar, 11 App. D. C. 417; White v. Ins. Co., 105 N. Y. S. 87; Sovereign Camp v. Hruby, 96 N. W. 998; Clemens v. Royal Neighbors, 103 N. W. 402; Pagett v. Connecticut, etc., Co., 66 N. Y. S. 804; Seybold v. Supreme Tent, 83 N. Y. S. 149; John v. Northwestern, etc., Assn., 63 N. W. 276. (10) The court's instruction (D) that the term intemperate meant "the excessive or habitual use of intoxicating liquor" was erroneous. The word "intemperate" means any immoderate or excessive use of intoxicating liquors, and the element of "habitual use" should not have been included in said definition. Defendant's instruction No. 2 on this question, refused by the court, was correct and should have been given. Beller v. Knights Pythias, 66 Mo. App. 499; Zeigler v. Commonwealth, 14 Atl. (Pa.) 237; Miller v. Insurance Co., 31 Ia. 21, 7 Am. Rep. 122, 34 Ia. 222; Insurance Co. v. Davey, 123 U. S. 739, 31 L. Ed. 315; Insurance Co. v. Ward, 140 U. S. 76,

35 L. Ed. 371; Marcoux v. Society of Beneficence, St. John Baptist, 39 Atl. (Me.) 1027; Mullinix v. People, 76 Ill. 211. (11) When a person who is intoxicated commits, without provocation, an assault on another, the only reasonable inference to be deduced from said actions is that the commission of said assault was due to intoxication, and when a mortal combat ensues as the result of said assault, and the person who committed said assault is killed, his said death can properly be said to have resulted from his intemperate use of intoxicating liquors, within the provisions of the contract providing for forfeiture from death resulting "directly or indirectly from his intemperate use of intoxicating liquors." Miller v. Ins. Co., 34 Ia. 222. (12) It is well settled in this State that the provisions in an insurance contract avoiding liability if the insured shall come to his death "in consequence of any violation, or attempted violation of the laws of any State;" relates to a crime, the character of which directly increases the risk, regardless of whether said crime is a felony or a misdemeanor. Wolff v. Ins. Co., 5 Mo. App. 236; Brown v. Supreme Lodge K. of P., 83 Mo. App. 633; Davis v. Modern Woodmen of America, 98 Mo. App. 713, 73 S. W. 923. (13) And where, as in this case, the insured was the aggressor and committed an unprovoked assault upon the man who killed him, it is not essential for the defendant to prove that his killing was justifiable homicide. It is enough if the act is unlawful in itself, and the consequences flowing from it are such as might have been reasonably expected to happen, for in such a case the ultimate result is traced back to the original proximate cause. Davis v. Modern Woodmen of America, supra; Ins. Co. v. Seaver, 19 Wall. 531, 2 L. Ed. 155; Murray v. Ins. Co., 96 N. Y. 614, 48 Am. Rep. 658; Bloom v. Ins. Co., 97 Ind. 478, 49 Am. Rep. 469. (14) It was error to instruct the jury that unless they found that Evans' death occurred as the "ordinary consequence" of the assault committed on Holly, they should find for the plaintiff.

Bloom v. Ins. Co., (supra). (15) Notwithstanding the fact that the burden was on the defendant to establish that John Evans' death was in consequence of the violation of the law of Missouri, the defendant was not required to prove that fact beyond a reasonable doubt, but merely by a preponderance of the evidence. The same rule applies with relation to the necessity, if this court holds that it be a necessity, of establishing that his death was due to a justifiable homicide. Marshall v. Ins. Co., 43 Mo. 586; Edwards v. Knapp, 97 Mo. 432; Nichols v. Winfren, 79 Mo. 544; Culbertson v. Hill, 87 Mo. 544. (16) The question of the competency of evidence of experiments is one of law for the court to determine, and such experiments, evidence of which is sought to be introduced, must have been made under circumstances and conditions similar to those constituting, as it were, the premises from which the original event is alleged to have been the conclusion. 12 Am. and Eng. Ency. Law (2 Ed.), pp. 409 and 406, citing; Railroad v. Champion, 32 N. E. (Ind.) 874; Tesney v. State, 77 Ala. 33.

*W. L. Hensley* and *Chas. G. Revelle* for respondent.

(1) The evidence wholly fails to establish that the decedent's age was not as represented in his application for membership. Lemen v. Ins. Co., 49 La. Ann. 1191; Baldi v. Ins. Co., 24 Pa. Sup. Ct. 275. In considering this phase it must also be remembered that the rule in this class of cases is that forfeitures, since they are uniformly in the interest of the insurer which has received its benefits from the contract, are looked upon with disfavor, and every reasonable doubt is to be resolved against them. Nothing is to be taken as conceded but what is given in unmistakable terms, or clearly proven to the satisfaction of reasonable minds. Lewine v. Superior Lodge K. of P., 122 Mo. App. 560; Foglesong v. M. B. of America, 121 Mo. App. 553; Loesch v. Union

C. & S. Co., 176 Mo. 666; Seibert v. Chosen Friends, 23
Mo. App. 168. If this court were at liberty to weigh
the evidence, we feel no hesitancy in saying that it would
find no fault with the verdict on this question of fact,
since no other conclusion could be intelligibly reached.
Among other authorities supporting our views in this
respect, we call attention to the following: Home Bene-
fit Assn. v. Sargant, 142 U. S. 691; Ins. Co. v. Stibble,
46 Md. 302; Beckett v. N. W. Masonic Aid Assn., 67
Minn. 298; Wells v. Ins. Co., 19 App. Div. (N. Y.) 18.
(2) The evidence abundantly supports the jury's find-
ing that the insured did not come to his death in con-
sequence of the violation, by him, of the laws of the
State. In construing this ground of forfeiture, it has
been uniformly held that the intemperate use of intoxi-
cating liquor must have been the direct cause of the
death. Miller v. Ins. Co., 31 Ia. 235; Ins. Co. v. Stibble,
46 Md. 314. (3) The court committed no error in its
rulings on the admission and exclusion of evidence. De-
fendant complains first, because its witness, Brown,
who for six years had been clerk of the lodge, was per-
mitted to state whether or not during the life and mem-
bership of deceased he was tried by the order on the
charge of the intemperate use of intoxicating liquor.
Plaintiff had a right to know whether, in fact, deceased
had been tried by the lodge, since, if he had and was not
suspended, this amounted to a waiver of forfeiture on
that account. Callies v. Modern Woodmen, 98 Mo. App.
526; Lewis v. Assn., 76 Mo. App. 586; Frame v. Wood-
men, 67 Mo. App. 127. After the witness testified that
deceased had not been tried on this charge, defendant
was evidently satisfied, since it did not move to strike
out the question or answer. All objections, therefore,
were waived. State v. Bateman, 198 Mo. 223; Waddell
v. Railroad, 113 Mo. App. 687.

STATEMENT.—Action by plaintiff on a benefit certificate, taken out by one John Samuel Evans, hereafter referred to as John Evans, or Evans, on his life, loss payable in case of death to plaintiff, who is his brother. It is averred in the petition that John Evans kept and performed all the terms and conditions of the policy; that up to the time of his death he had paid all the assessments and dues levied, and that the policy was in full force at the time of his death; that he died on the 22d of February, 1908; that plaintiff had furnished due proofs of loss to the defendant, whereby it became liable to him in the sum of $2000, and that not being paid he sues.

The answer, averring that plaintiff is a fraternal beneficial society, organized, incorporated and existing under and by virtue of the laws of the State of Illinois, relating to fraternal beneficial societies, and duly authorized to transact business as such in the State of Missouri, under and by virtue of the laws of this State, relating to fraternal beneficial societies, and admitting that John Evans made application for membership and that a membership certificate was issued to him, loss payable on his death to the plaintiff, and denying all the other allegations in the petition, and setting up the terms and conditions upon which membership is granted and benefit certificates issued in its order, and after averring that John Samuel Evans, when he became a member and received the certificate, was subject to all the conditions imposed on members by the constitution, by-laws and articles of organization of the company, and expressly agreed in his application for membership that all statements made therein were warranties, sets up as the first affirmative defense, that contrary to the conditions and provisions of the contract between John Samuel Evans and the defendant organization, he (Evans) had come to his death in consequence of a violation by him of the laws of the State of Missouri, in that he made an assault upon one Holly, and that said

Holly, in order to defend himself and while defending himself from the assault of Evans, had shot and killed Evans; that the assault was contrary to and in violation of the laws of the State of Missouri; that Evans came to his death in consequence of that violation and that by reason thereof the benefit certificate sued on became null and void, and defendant was thereby released and discharged from any and all liability thereon. As a second affirmative defense, it is set up that John Samuel Evans, contrary to the terms and conditions of his membership in the order, became and was intemperate in the use of intoxicating liquors, by reason whereof the benefit certificate sued on became and was null and void. For a third affirmative defense, it is set up that John Samuel Evans came to his death as a result of the intemperate use of intoxicating liquors by him; that while intoxicated and under the influence of intoxicating liquors, he had engaged in the controversy with and committed the assault on Holly, before referred to, and that Holly, in defending himself, had shot Evans, and by reason thereof the benefit certificate was forfeited and became null and void. The fourth affirmative defense set up is that in his application for membership John Samuel Evans stated that he was born in Crawford county, Missouri, on the 22d day of December, 1881; that that answer was false and untrue, said Evans having in fact been born prior to that date and that by reason of this false and untrue answer, a breach of the warranty as to the truth of statements contained in the application for membership had been committed and the benefit certificate forfeited.

The reply was a general denial.

At the trial of the cause before the court and jury, the certificate of membership, which is in ordinary form, was introduced by plaintiff, as also the application for membership, by which latter it appeared that John Samuel Evans stated that he was born in Crawford county, Missouri, on the 22d of December, 1881. The applica-

tion contained the usual covenants and warranties exacted by this class of societies. Evidence was introduced of the fact of the death of John Samuel Evans, which occurred on the 22d of February, 1908. The evidence also showed that proofs of death of Evans had been duly forwarded to the proper officer of the defendant. Plaintiff thereupon rested.

The defendant introduced a stipulation, agreed to by counsel for the respective parties, to the effect that the defendant is a fraternal beneficial society, organized, incorporated and existing under and by virtue of the laws of the State of Illinois, relating to fraternal, beneficial societies; that during all the times mentioned in plaintiff's petition, defendant was a fraternal beneficial society, as defined by the statutes of Missouri relating to fraternal beneficial societies; that during all of said times the defendant was and is duly and regularly authorized to transact business as a fraternal beneficial society, under and by virtue of the laws of the State of Missouri, as found and contained in article 11, chapter 12, of the Revised Statutes of Missouri (1899); that the exhibit attached to the stipulation is a correct copy of the by-laws of the defendant, in force and covering the period involved in this case, each party reserving the right to produce such parts of the by-laws as they chose without further proof of authenticity than in the stipulation. Under the stipulation, the defendant then offered section 11 of the by-laws, which is a prohibition against intemperance and is to the effect that if any member of the society shall become intemperate in the use of intoxicating liquors or if his death shall result directly or indirectly from his intemperate use of intoxicating liquors, the benefit certificate shall become void. The original application of John Evans for membership, which had heretofore been introduced by plaintiff, was introduced and read in evidence by defendant. Proofs of death which had been forwarded to defendant were also introduced, which consisted of the affidavit

of the plaintiff, W. C. Evans, that he had known deceased for 27 years; that he "was born at Crawford county, in the State of Missouri, on the 22d of December, 1880, and was at the date of his decease, which occurred on the 22d of February, 1908, 27 years and two months old." Along with the proofs of death was the certificate of the physician, that John Evans had come to his death as the result of gunshot wounds inflicted on him at Doe Run, in Missouri, on the 22d of February, 1908. Plaintiff also in his affidavit stated that he was the person named in the membership certificate as beneficiary; that he was related to the deceased as brother. Accompanying the proof of death forwarded to defendant, and on blanks furnished to make proof, were instructions, among others, to the effect that before claims could be paid, in case an inquest had been held on the deceased, a duly authenticated and certified copy of the coroner's proceedings, as well as all evidence and the verdict, must accompany the proofs. After the introduction of the affidavit of plaintiff, the defendant offered in evidence the coroner's certificate covering the proceedings at the inquest on the body of John Samuel Evans, which, among other things, contained the verdict of the coroner's jury, to the effect that the deceased came to his death from a gunshot wound received from a revolver in the hands of one Holly, and that the death took place in Holly's restaurant in Doe Run, February 22, 1908. When this coroner's certificate was introduced along with the other proofs of death, plaintiff objected to its admission. The court overruled the objection as to all that part of the proofs of death, except the verdict of the coroner's jury, as to which the court indicated, by its ruling, that it was not admissible, but made no definite ruling. Whereupon defendant asked leave to recall a witness, who testified that he was the secretary of the camp of the order at Doe Run; that plaintiff had brought in proofs of loss which did not include the coroner's verdict; that he (witness), as the

clerk of the local camp, had obtained the copy of the coroner's verdict and attached it to the proofs which he sent on, but did not know whether plaintiff was aware of this or not. Defendant then read from its by-laws sections requiring the furnishing of this certificate of the coroner and one of the sections providing that the clerk of the local camp is made the agent of the camp and not the agent of the head camp in transactions with the order. Defendant again offered in evidence the certified copy of the coroner's verdict attached to the proofs of death. The objection being renewed and sustained by the court, defendant duly excepted. Defendant then introduced oral evidence tending to show the circumstances under which John Samuel Evans came to his death; that he was under the influence of liquor when he went into the restaurant kept by one Holly at Doe Run. Holly was in the front room, behind the counter. Evans asked him for lunch, which Holly refused to serve, whereupon Evans slapped Holly with his open hand, a hard lick. Holly ordered Evans out of the place and walked around to the end of the counter, shook his hand at Evans and told him to go out, that he didn't want any trouble; ordered Evans out. When Evans didn't go, Holly threw a bottle at him. Evans dodged the bottle and made a rush toward Holly, who was about six feet away. Evans threw up his left hand and struck Holly, who fell down. Evans then got on top of Holly and they were both lying on the floor struggling. While they were on the floor, Holly shot twice, inflicting the wound which resulted in Evans' death. This is rather a brief and possibly not an accurate statement of the evidence for defendant, but sufficient for all purposes as showing the facts as in evidence for defendant; that is to say, that John Evans was intoxicated and brought on the quarrel with Holly; that in the scuffle which ensued between Holly and John, the latter was shot twice by Holly, and from these shots, either of

which it is in evidence would have proved fatal, he died. Evidence tending to show the habit of Evans as to drinking was also offered and introduced on part of defendant, the tendency of which was to prove that he was intoxicated at the time of the difficulty in which he met his death, and that on several occasions prior thereto he had been under the influence of liquor. Defendant thereupon rested its case, and plaintiff, in rebuttal, introduced witnesses who gave evidence tending to show that Holly was the aggressor in the fight; that Evans was not intoxicated and that at the time of his death, he was neither armed nor the aggressor in the fight. The plaintiff himself on the witness stand and in rebuttal testified that he made the statement which he had sworn to before a notary public, in relation to the age of his brother John Samuel. To quote from the testimony of plaintiff in full on this subject, he testified that he had gone before a notary, who filled out the blank proofs. That he told the notary, that "to the best of my knowledge he (John S. Evans) was born in 1880; I couldn't be positive that is the date, that was my impression. I have no means of knowing except from memory. I haven't made any inquiry to ascertain his true age. I don't know any more now than I did then. I couldn't be positive about it, it was wholly a matter of impression with me." On cross-examination he testified: "I made the affidavit in the death proofs, and at that time the statement contained therein that my brother John Samuel Evans was born on the 22d day of December, 1880, was my best impression." In rebuttal, a witness was asked by counsel for plaintiff whether or not at any time from the time the policy was issued until the time of his death, John Samuel Evans was tried by the local camp upon the charge of intemperate use of intoxicating liquors or any other charge. This was objected to by the defendant as not an issue in the case and not tending to prove any issue in the case, and as improper and incompe-

tent and not proper in rebuttal. The objection was sustained by the court. The witness was then asked whether or not at any time from the time the policy was issued until the time of his death, Evans was tried by the local lodge upon the charge of the intemperate use of intoxicating liquors or any other charge. This was objected to for the reasons above stated, and for the further reason that it did not tend to prove any issue of the case, is not in rebuttal, no waiver having been plead by reply, and therefore not competent. The court remarked that if the lodge had not had such a trial, it would not be competent, so that he would let the question go in; "will let witness answer that question from that view of the case." Exception was duly saved by the defendant, the further objection being made that it is not responsive to any issue in the case, whereupon the witness answered that insured was not so tried.

At the close of the evidence, defendant asked an instruction directing a verdict in its favor which the court refused to give and defendant duly saved its exception.

At the request of plaintiff the court gave instructions A, B, C, D and E. Instruction A was a general one, covering the issue of the policy, the death of Evans, furnishing of proofs of loss, and instructing the jury that if they found from the evidence in the case that John Samuel Evans and the plaintiff herein kept and performed all the terms and conditions of the policy and that defendant had failed to pay plaintiff two thousand dollars, then plaintiff is entitled to a verdict for that amount, with interest at the rate of six per cent per annum from the date of the demand of payment by plaintiff until date of the trial. While the giving of this instruction is excepted to by the defendant, no error is assigned to it in the assignment of errors lodged with this court, so that it is unnecessary to   set it out with more particularity. Instruction B

is substantially to the effect that if the jury found from the evidence in the case that John Samuel Evans assaulted Holly, "yet before you can find the issues in this cause for the defendant on that ground alone, you must further find and believe from the evidence that said assault was in violation of the laws of this State, and that the death of said John Samuel Evans occurred as the ordinary consequence of said assault; and unless you do so find and believe, your finding on this defense will be for the plaintiff." Instruction C is, in substance, that although the jury might find and believe from the evidence in the cause, that after the issuance to Evans of the insurance policy sued on and before his death, Evans used and drank intoxicating liquors, yet the jury will not find the issues for the defendant on that ground alone, unless they further found and believed from the evidence that Evans became intemperate in the use of intoxicating liquors. Instruction D told the jury "that by the term 'intemperate,' as used in these instructions, is meant the excessive or habitual use of intoxicating liquor." Instruction E told the jury, substantially, that the statement contained in the affidavit of the plaintiff in the proofs of death furnished by him to defendant with relation to the date of the birth of John Samuel Evans, "is an admission by the plaintiff as to the date of the birth of said John Samuel Evans, and establishes said fact unless said statement is explained or overcome by the evidence in this cause to your satisfaction."

At the instance of the defendant the court gave ten instructions, numbered from 5 to 14, both inclusive. Instruction No. 5 told the jury that the application, the benefit certificate and the by-laws constitute the contract sued on and each were mutually binding upon the plaintiff and the defendant. Instruction No. 6 told the jury that if they believed that John Samuel Evans committed the assault on Holly, without provocation, and that Holly, in order to defend himself from the assault, shot and killed Evans, the verdict must be for

defendant. Instruction No. 7 told the jury that if they found from the evidence that John Samuel Evans, without provocation, assaulted Holly, and that Evans engaged in a combat with Holly, in the course of which and in order to defend himself, Holly shot and killed instruction told the jury that if they found from the Evans, the verdict must be for defendant. The eighth evidence that Evans, without provocation, struck Holly, his act, under the laws of this State, constituted an assault and is such a violation of the laws of the State as is contemplated in the contract sued on. The ninth instruction told the jury that if they found that the death of Evans occurred in consequence of the assault, the verdict must be for the defendant. The tenth instruction told the jury that if they believed from the evidence that after the issue of the benefit certificate to him, Evans became intemperate in the use of intoxicating liquors, their verdict must be for the defendant. The eleventh instruction told the jury that if they found from the evidence, that on the 22d of February, 1908, and immediately prior to his death, Evans was intoxicated, and that his death was directly or indirectly due to intoxication, their verdict must be for the defendant. The twelfth instruction told the jury that if they found that on the 22d of February, Evans was intoxicated and while intoxicated engaged in a combat with or committed an assault on Holly and while defending himself, Holly killed Evans, then the verdict must be for the defendant. Instruction numbered 13 told the jury that if they found from the evidence that the statement of the insured, John Samuel Evans, in his application for membership in the defendant order, that he was born on the 22d of December, 1881, was not literally true, their verdict must be for defendant. The fourteenth instruction told the jury that while the burthen is upon the defendant to establish either or all of the defenses pleaded in its answer, "nevertheless it is only necessary for the defendant to establish said defenses,

or either of them, to the reasonable satisfaction of the jury, by a preponderance or greater weight of the evidence."

The defendant further asked instructions numbered 1, 2, 3 and 4. Number 1 is to the effect that on the evidence in the case, the jury must find for the defendant. In number 2, the defendant asked the court to instruct the jury that the term "intemperate in the use of intoxicating liquors," as used in the contract sued on, "refers to the excessive use of intoxicating liquors by the insured, and that the use of intoxicating liquors to such an extent as to cause intoxication or drunkenness, is the intemperate use of intoxicating liquors within the meaning of the contract herein sued on." In the third instruction, the court was requested to instruct the jury that if they found that on various occasions subsequent to the delivery to him of the benefit certificate sued on, Evans was drunk or intoxicated from the use of intoxicating liquors, the verdict must be for the defendant. In the fourth instruction the court was asked to direct the jury "that the statement contained in the affidavit of the plaintiff in the proofs of death furnished by him to the defendant herein, with relation to the date of the birth of said John S. Evans, is an admission by said plaintiff as to the date of the birth of said John S. Evans and binding upon him, and establishes on its face that the said John S. Evans was born on the 22d of December, 1880, and that the answer in his said application for membership, that he was born on December 22, 1881, was untrue." The court refused these four instructions, defendant excepting.

At the conclusion of arguments by counsel, the jury returned a verdict in favor of plaintiff for two thousand dollars, with interest from the 22d of March, 1908, a total of $2051.65. Defendant in due time filed its motion for a new trial, as well as a motion in arrest, both of which were overruled, defendant excepting, and in due time applying for an appeal and filing its bond,

has brought the case here by appeal.

REYNOLDS, P. J. (after stating the facts).— Cases involving the liability of companies organized to carry on business on what is called benefit or benevolent insurance, have been so frequently before the appellate courts of the country, that it is unnecessary to set out with great particularity the restrictions and limitations thrown around their members by the constitution, by-laws and certificates of membership issued by them. With the idea that these organizations were benevolent, charitable and non-profit sharing, our lawmakers have been exceedingly liberal toward them, and have exempted them from practically all the laws of our State, governing old-line or regular insurance companies, and while by the laws relating to these latter, both by letter as well as construction, hardly any defense is open or available to an old-line, regular insurance company, and they are rarely before our courts as defendants, the benevolent or fraternal, as well as assessment companies, are constantly in court with exceedingly technical defenses, the doctrine of representations and warranties, in all its rigors of interpretation being available to them. This, however, is a matter entirely under control of our Legislature, which has seen fit to adopt it as the policy of the State, and with which the courts, beyond enforcing and interpreting the law as enacted, have no concern. We make these observations because of the fact that none of the defenses herein set up by this defendant would be available, in favor of an old-line, regular life insurance company. Fortunately for the members of these benevolent associations, the determination of the fact of the defenses set up is left to the juries of the land. While it may be conceded in this case that the evidence of the defendant tended to show that the deceased was frequently intoxicated, and while the evidence is without contradiction that he was killed in a fight which the evidence strongly tends to prove was brought on by himself, and while there is a

discrepancy of a year in his age between that stated by himself and that stated by the plaintiff when he was making the proofs of death, these matters were all matters of fact to be determined by the jury under proper instructions. In this case they are so well and carefully and thoroughly covered by the instructions which the court gave, that we cannot say that the jury were either misdirected or lacking in proper direction, or that their verdict is unsupported by substantial evidence in the case. Without going into an examination of the authorities which the learned counsel on each side, with such great care and industry, have cited, it is sufficient to say that none of the authorities to which our attention has been called justify us in overturning this verdict, on the grounds assigned by defendant. Especially is this so as to the alleged misrepresentation as to age, or variance, more accurately speaking, between the date of his birth given by the insured and the date of his birth given by the plaintiff when making proofs of loss. This question of the discrepancy was submitted to the jury by such fair and full instructions that we could only disturb their verdict on this part of the case by holding that there was no evidence upon which to found the instruction itself, and we cannot do that, as we cannot say that. It is true that the testimony of the plaintiff in explanation of his knowledge of the true date of birth of the insured is not very satisfactory and rather meager, but that matter was fairly submitted to the jury under the instructions given at the instance of plaintiff, and its probative weight was for the jury. It is true defendant asked for a direction for a verdict on this, but we hold that to have been correctly refused.

In Connecticut Mut. Life Ins. Co. v. Schwenk, 94 U. S. 593, a case in which it appeared that the plaintiff in making proof of death had stated the age of the deceased differently from that stated by the deceased himself in his application for membership, it further

appears that the plaintiff, in explanation of this, had testified, in substance, that he had no positive knowledge of the age of the deceased, and that the age fixed by him in his affidavit was a mere impression founded upon the appearance of the deceased. This explanation of the variance is no more satisfactory than that given by the plaintiff in this case, but upon it the court held that it was sufficient to obviate the effect of the statement contained in the proofs and sufficient to raise an issue of fact to be determined solely by the jury. To the same effect, and referring to similar statements not based upon actual knowledge, are the decisions of the Supreme Court of Louisiana in Leman v. Insurance Co., 46 La. Ann. 1189, and that of the Superior Court of Pennsylvania in Baldi v. Met. Life Ins. Co., 24 Pa. Sup. Ct. 275. So the Supreme Court of Wisconsin held in Bachmeyer v. The Mut. Reserve Fund Life Ass'n, 82 Wis. 255. Appellant cites us in opposition to this position and in support of its proposition that the proofs of death furnished to the society are prima facie evidence of the facts therein stated, and are conclusive unless the beneficiary shows that the statements made therein were erroneous or were given through mistake, to many cases, among others, Insurance Co. v. Newton, 22 Wall. 32; Hassencamp v. Mut. Ben. Life Ins. Co., 120 Fed. 475, and Almond v. Modern Woodmen of America, 133 Mo. App. 382, 113 S. W. 695. An examination of these cases and of the other authorities cited do not, however, militate against the rule laid down in the cases which we have above noted. Nor do the cases of Reichenbach v. Ellerbe, 115 Mo. 588, 22 S. W. 573; Carroll v. Interstate Rapid Transit Co., 107 Mo. 653, 17 S. W. 889; and Lavin v. Grand Lodge A. O. U. W., 104 Mo. App. 1, 78 S. W. 325, cited by appellant, bear on this particular matter or throw light upon it. The effect and the point decided in those cases is that where the uncontroverted evidence showed a forfeiture of membership, it is the

duty of the trial court to direct a verdict for the defendant. That proposition is not disputed, but does not meet the facts in this case, because the testimony of the plaintiff in this case was of such a character as to leave the determination of the real fact as to whether the insured had misstated his age himself or whether the plaintiff himself was in error, to the determination of the jury. This brings the case at bar within the case of Gannon v. Laclede Gaslight Co., 145 Mo. 502, 46 S. W. 968, in which the Reichenbach case is practically criticised out of existence as authority for the proposition here relied upon by appellant. It might well be that the jury concluded, from the testimony of the plaintiff as to the vagueness of his information as to the date of the birth of his brother, the insured, that the statement of the insured was more likely to be correct than that of the claimant, the latter's statement based on such very indefinite information, falling short of knowledge. At any rate, there was enough before the jury, taking into consideration the application of the insured and the testimony of the plaintiff, to warrant the jury to determine as a fact whether or not there had been a misstatement of the insured in the application which he had made for membership, and after all the real fact to be determined in the case was the fact of age and not what some one else, even the plaintiff there, may have said about it.

The questions of whether the deceased was intoxicated at the time he met his death, or whether he was intemperate between the time of his connection with the defendant corporation and his death, were fully submitted to the jury on instructions of which appellant has no right to complain. The testimony in the case would justify the finding either way and by their verdict, the jury found against the defendant. In saying this, however, we do not wish to be understood as holding that the instruction marked "D," which the court gave at the instance of plaintiff, is a correct defi-

nition of the term "intemperate." As will be noted in the instruction, the court defined "intemperate," as used in the instructions, to mean "the excessive or habitual use of intoxicating liquors." This is not accurate. Intemperance, having reference to the use of liquor, may be defined to be the· habitually excessive use of intoxicating liquors. It is not correct to say that the habitual use of intoxicating liquor constitutes intemperance, for while the habitually excessive use of intoxicating liquor is intemperance, the habitual use of intoxicating liquor is not intemperance, unless the habitual use is also excessive to the extent of producing intoxication. As this, however, was an error against the plaintiff, who is respondent, it is, of course, no ground for reversal. The refused instruction No. 2, which the defendant asked, covering the matter of intoxication, was more nearly correct than that given at the instance of plaintiff, but even that is not accurate, unless we interline in it after the word "use," the word "habitual," for an occasional use of intoxicants, even to the extent of drunkenness, as for instance one or two acts of over-indulgence in liquor, to the extent of intoxication, does not necessarily mean that the party so indulging is intemperate in the sense of the law.

There is one error connected with the case that we cannot pass over in silence, and that consists in the admission of the testimony offered on the part of the plaintiff, to the effect that at no time had the deceased been tried by the local camp for intemperance or any other offense. This evidence was improperly admitted, but we are not prepared to say that its admission was so material and so important as to seriously and materially damage the defendant. Under the facts in the case, we cannot hold that its admission was reversible error. Our conclusion upon the whole case is that the verdict and judgment of the lower court are

right.　Accordingly the judgment must be and is affirmed.　All concur.