## 11679

## DEADWYLER v. GRAND LODGE K. OF P. ETC.

### (126 S. E., 437)

1. INSURANCE—INSURANCE CONTRACTS CONSTRUED ACCORDING TO TERMS USED TAKEN IN ORDINARY SENSE.—Insurance contracts, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and, if they are clear and unambiguous, their terms are to be taken in their plain, ordinary, and popular sense.

2. INSURANCE—DEATH OF MEMBER HELD NOT RESULT OF "INTEMPERANCE" OR "IMMORAL CONDUCT."—Death of member of beneficiary society who was shot and killed by officers while he was attempting while intoxicated to prevent them from searching his barber shop for whiskey was not result of "intemperance or immoral conduct" within policy exempting society from payment, where death so resulted; "intemperance" meaning habitual use of intoxicating liquors to excess, and "immoral conduct" meaning sexual immorality.

3. INSURANCE—RULE AS TO CONSTRUCTION OF DEATH BENEFIT CERTIFICATE STATED.—Rules of construction applicable to life insurance contracts, generally, are applicable to construction of contracts to

pay death benefits made by fraternal benefit associations and mutual benefit societies, excepting in so far as those rules must be *held* to be modified by the peculiar organization, objects, and policies of such societies.

4. INSURANCE—CONSTRUCTION BENEFICIAL TO INSURED ADOPTED, WHERE LANGUAGE IS SUSCEPTIBLE OF MORE THAN ONE CONSTRUCTION.— Where language of mutual beneficiary society's contract may be understood in more sense than one, or where it is doubtful whether given words were used in an enlarged or restricted sense, other things being equal, that construction should be adopted which is most beneficial to the insured.

5. INSURANCE—RECORD OF CORONER'S INQUEST HELD NOT ADMISSIBLE.— In action on death benefit policy of beneficiary society involving issue as to whether death was result of "intemperance or immoral conduct," record of coroner's inquest *held* not admissible.

Before SHIPP, J., Spartanburg, 1924. Affirmed.

Action by Mattie Deadwyler against Grand Lodge Knights of Pythias of North America, South America, Europe, Asia, Africa and Australia. Judgment for plaintiff and defendant appeals.

*Mr. N. J. Frederick,* for appellant, cites: *Immoral conduct:* 179 N. W., 735; Abb. L. Div., 582; 48 Pac., 918; 76 Ill., 211. *Record of coroner's jury admissible:* 3 Wig. Evid., 2nd Ed., Sec. 1671; Greenleaf Evid., 14th Ed., Sec. 556.

*Messrs. J. B. Andrews* and *R. B. Pasley,* for respondent, cite: *Affirmative defense:* 102 S. C., 122. *Forfeitures not favor:* 102 S. C., 122; 103 S. C., 288; 96 U. S., 577; 101 S. E., 553. *Coroner's inquest not admissible:* 98 S. C., 105; 126 S. C., 13; 97 S. E., 557; 96 S. C., 938.

February 12, 1925.

The opinion of the Court was delivered by MR. JUSTICE MARION.

Action by beneficiaries to recover of the defendant, a domestic fraternal order, a sum alleged to be payable in accordance with the terms of a policy of insurance issued to one Lacy Deadwyler, deceased.

The defense was that Lacy Deadwyler, as a member of the defendant order, was bound by the following rule: "Any member meeting death as the result of intemperance or immoral conduct, or by suicide, shall not be entitled to the benefit provided in case of death," and that he had met death "as the result of intemperance or immoral conduct."

The undisputed facts are that police officers, with a search warrant, went to Lacy Deadwyler's barber shop in the city of Spartanburg to make a search for whiskey; that Deadwyler was out when the officers went to his shop, but came in while they were there; that when he came in he "was heavily under the influence of whiskey"; that in the course of the officers' search of the shop Deadwyler tried to remove and destroy whiskey; that there was a personal encounter between the officers and Deadwyler in the shop; that Deadwyler ran out on the street, and was followed, and shortly thereafter shot and killed by the officers.

His Honor, Judge Shipp, the trial Judge, directed a verdict for the plaintiff on the ground that the evidential facts were not reasonably open to the inference that the insured had met his death "as the result of intemperance or immoral conduct" within the meaning of those terms as used in the rules of the order. Whether he erred in so holding is the substantial question raised by the defendant's appeal.

We think the trial Court's view must be sustained. 1, 2 ·It is "well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and, if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense." 14 R. C. L., 931, § 103. We are of the opinion that the Circuit Judge correctly held that, taken in the ordinary and popular sense, the term "intemperance" means the habitual use of intoxicating liquors to excess (see *Fludd v. Equitable Life Assur. Soc., etc.,* 75 S. C.,

315; 55 S. E., 762. *Schon v. Modern Woodmen of America,* 51 Wash., 482; 99 P., 25. *Evans v. Modern W. of A.,* 147 Mo. App., 155; 129 S. W., 485; 491. *O'Connor v. Modern Woodmen, etc.,* 110 Minn., 18; 124 N. W., 454; 25 L. R. A. [N. S.], 1244) ; and that in its ordinary and popular sense the term "immoral conduct" is taken and understood to refer to and denote sexual immorality. If so, those terms as used in this contract were soundly interpreted to bear those meanings, and, under the facts in evidence, the verdict was properly directed.

But appellant contends that the terms "intemperance" 3, 4 and "immoral conduct," as used in the rules of the defendant order, may not properly be given the restricted meaning above indicated. Unquestionably, from the standpoint of the lexicographer, the terms are susceptible of a much broader definition, and might correctly be given a much wider signification. But appellant has not sustained its contention that those terms as here used are to be taken and understood in the enlarged rather than in the restricted sense. The rules of construction applicable to life insurance contracts generally are applicable to the construction and interpretation of contracts to pay death benefits made by fraternal benefit associations and mutual benefit societies, except in so far as those rules must be held to be modified by the peculiar organization, objects, and policy of such societies. 14 R. C. L., 840, § 3. It does not appear that there is any peculiarity of organization, object, or policy which would make inapplicable to the contract here involved what has been called "the primary rule that such contracts are to be most strongly construed against the insurer and in favor of the insured." 14 R. C. L., 926, § 103. *Sample v. Ins. Co.,* 46 S. C., 491, 495; 24 S. E., 334; 47 L. R. A., 696; 57 Am. St. Rep., 701. Thus, where the language of such a contract may be understood in more senses than one, or where it is doubtful whether given words were used in an enlarged or restricted sense, other things being equal, that

construction should be adopted which is most beneficial to the insured. See *Livingston v. Union Cent. Life Ins. Co.*; 120 S. C., 93; 112 S. E., 547, and authorities cited in concurring opinion of the writer at pages 99 and 100. Assuming, for present purposes, that the improper conduct of the deceased, Deadwyler, which the evidence tended to establish had a sufficient causal connection with his death, and conceding that the terms "intemperance" and "immoral conduct" might reasonably be construed to embrace the conduct of which Deadwyler was guilty, we think the contract is also reasonably susceptible of a construction which would not bring the conduct of Deadwyler in getting under the influence of whiskey on one occasion, in violating the prohibition law, and in resisting arrest, etc., within the meaning of the terms "intemperance" and "immoral conduct." If so, in accordance with the foregoing settled principles of construction, the words in question must be held to have been used in the sense most favorable to the insured, which is the restricted sense given them by the learned Circuit Judge.

The only remaining exception imputes error to the Circuit Judge in excluding as evidence the record of the coroner's inquest in the matter of the death of the deceased, Deadwyler. The ruling of the trial Court was in accord with the views announced in *Sandel v. State*, 126 S. C., 1; 119 S. E., 776, 780, and the exception must be overruled.

The judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES WATTS and FRASER concur.

MR. CHIEF JUSTICE GARY and MR. JUSTICE COTHRAN did not participate.