Grafton,
May 1, 1928. }

DORA CAPLAN *v.* LENA CAPLAN & *a.*

*Murchie & Murchie* and *Fred A. Jones* (*Mr. Alexander Murchie* orally), for the plaintiff.

*Raymond Trainor* (of Vermont) and *Demond, Woodworth, Sulloway & Rogers* (*Mr. Jonathan Piper* orally), for the defendants.

ALLEN, J. The motion for a directed verdict should have been granted.

For convenience the plaintiff's husband is referred to as David, his father as Louis, and his mother as Lena. David had always lived with his parents and when he and the plaintiff were married, she joined the household. The marriage proved unsuccessful and there was a separation after a few months, when the plaintiff returned to her former home. In a general way the plaintiff claimed that the defendants sought to make a domestic servant of her, while the defendants took the position that she married for mercenary reasons. The home with the defendants made a situation materially contributing to the circumstances leading to the separation. The sufficiency of the evidence to justify the verdict against Lena is conceded. The evidence tended to show a course of conduct on her part inspired by ill will and hostility towards the plaintiff, accomplishing its purpose by a dominating influence over David, and consisting mainly of advice and counsel to him not to have marital relations with his wife and of criticism to him about her. Lena finally, in David's presence and without any protest from him, ordered the plaintiff to leave the defendants' home.

Louis knew what Lena's conduct was at the time of it and acquiesced in it to the extent of approval. It is claimed that he encouraged and furthered it and that there was conduct of his own apart from Lena's from which it might be inferred that he joined in the alienation not only in responsibility for Lena's conduct but in taking separate and distinct action of his own.

It is also argued that a husband is liable for his wife's torts, at least when they are committed in his presence and not objected to by him. This contention is unavailing. "Every married woman . . . may . . . sue and be sued . . . for any wrong by her done, as if she were unmarried." P. L., c. 288, s. 2. ". . . since he [the husband] has no more legal power of physical control over her than she has over him, no more reason seems to remain for holding him liable for her torts than for holding her liable for his." *Harris* v. *Webster*, 58 N. H. 481, 484. "Husband and wife now stand upon an equality of right in respect to property, torts, and contracts," subject only to express statutory exceptions. *Seaver* v. *Adams*, 66 N. H. 142, 143. The husband's lack of right to exercise physical control over his wife does away with any presumption of coercion by reason of the marital relationship, and the fact of marriage is not enough to justify an inference of participation or furtherance from acquiescence or approval. "It is not enough that he should know of and acquiesce in the tort, or even approve of it; but he must have had some active participation in bringing it about, either by some act which he did himself, or something which his wife did under his direction." *Claxton* v. *Pool* (Mo.), 197 So. W. Rep. 349. See also *Multer* v. *Knibbs*, 193 Mass. 556.

In her own testimony the plaintiff makes no charges against Louis of conduct indicating participation in the alienation, and its burden is largely confined to ill treatment by Lena and David. In argument, however, a number of incidents to which she testified are pointed out as evidence of participation. Giving them attention, shortly before the marriage Louis "took over" David's auto bus business, and it is urged that the transaction might be found promotive to increase the defendants' domination over David and to facilitate their later efforts, alleged as to Louis, to bring about the separation. What was meant by taking over the business is not at all clear. Granting that David had owned the business and the property employed in it, he continued to manage it after Louis thus took it over. At the trial the reason for the change was not sought to be disclosed, and it may not be inferred that it was on account of the relations between the plaintiff and David or was made as an incident in the course of conduct

constituting the alienation or in furtherance of the result which the plaintiff seeks to attach to it. Until after its consummation the defendants actively favored the marriage, and it is too contrary to reason to infer from the later events disclosed that before the marriage took place they were already planning for its possible disruption.

Prior to the marriage the plaintiff was promised a separate home for herself and David by him and the defendants. The promise was not fulfilled. She did not require it as a condition of the marriage and when upon the marriage David took her to live at the defendants' home, she made no complaint about it. It is hardly to be believed that if she expected until the marriage to be installed in a separate home, its character and furnishings would not have been discussed between her and David and that she would have said nothing about her feelings on learning that she was to live with the defendants. And the only fair inference is that the promise was not of such a home at the outset but referred to a reasonable time in the future. As the plaintiff and David were separated a few months after the marriage, the non-fulfillment of the promise was no interference with their relations. When the promise was made, the defendants favored the marriage, and no purpose at that time to disregard the promise can be inferred. That it was not carried out might be a consequence, but not a cause, of the separation and the happenings which led to it.

Point is also made of Louis' failure to notify David of a telephone call for him from the plaintiff while she was away from home on a visit and while he was out. The plaintiff found an unfavorable change in David's attitude towards her on her return. Without assigning reasons for the insufficiency of the evidence to show participation, it was of hearsay character. The plaintiff testified that David found fault because she did not telephone to him, and it was only his statement to her that he had not been notified by Louis of her call that appeared in evidence. While the evidence of the talk between them was competent to show their relations and attitude, it was not competent to show the truth of facts asserted by him in the talk, and it is assumed the jury were instructed to limit the use of the evidence to its proper purposes. *O'Dowd* v. *Heller*, 82 N. H. 387, 389.

On one occasion the plaintiff complained to Louis of the way Lena treated her and he replied in effect that what Lena and David did met with no objection from him. If his reply may be construed as going further and amounting to an expression of approval of their conduct, it is no evidence that he "aided and abetted" them in it. He owed no duty to the plaintiff to object to what they did, and it

was his right to approve of it. If his remark signified that he held the plaintiff in unfavorable regard, it did not signify conduct in pursuance of it of a wrongful character, and there is no liability for a state of mind.

When the plaintiff was told by Lena to leave the defendants' home, she went to the house of a neighbor, and he testified that she told him "they" had ordered her to go. Her own version of what happened shows that the reference did not include Louis. So far as appears, he was not even a witness of the incident. Soon afterwards the neighbor went to the defendants' home to inquire about the trouble. They and David were all present. Lena did most of the talking. Only one statement appears to have been made by Louis and the neighbor did not recall what it was. The fact that Louis objected neither to what his wife had done in ordering the plaintiff out nor to the criticisms of the plaintiff she made in the talk has no probative value in showing that he took part in the incident.

Soon after the separation a man interested in the plaintiff sought to have the defendants provide a separate home for her and David. They refused and the suit was brought. Thereafter unsuccessful efforts were made for a reconciliation. After the suit was brought Louis at all times took his wife's side and stood up for her passively and actively. He joined in her criticisms of the plaintiff and in resistance to the demands made upon them. But the record shows no acknowledgment of sharing in the responsibility for the separation. If the criticisms of the plaintiff were unfounded, there is nothing to show that he did not believe his wife's assertions of them. No evidence of his purpose to injure the plaintiff or of bad faith towards her is found.

Until the separation, if he was not a neutral spectator, his approval of his wife's and son's conduct fell short of participation or even encouragement, so far as the evidence discloses. His wife called on him for no assistance and received no urging. He did no more than to let matters take their course, with acquiescence in her conduct and some expressed approval. Such approval was of what had been done and not of what she proposed to do, so far as it related to her liability. No instance has been disclosed of any affirmative action of his which tended to affect the relations between the plaintiff and David.

After the suit was brought Louis' interest both because he was a defendant and because his wife was also sued explains his stand and statements against the plaintiff and his part in the undertakings to bring her and David together again. All he said and did was com-

patible with proper motives and indicated innocence as much as wrong. At most, no fair conclusion of wrong can be drawn in the plaintiff's favor and the evidence is as consistent with a rightful as a wrongful quality of his conduct.

Neither his first failure to undertake a reconciliation nor his later efforts to that end show that he was in any way responsible for the separation. He had the right to hold the plaintiff in disfavor and not to take action to have her return when she left his home. Also, both before and after the suit was brought he had the right to do what he could in adjusting the trouble. His proper interest as a defendant as well as in the difficulties of his wife and son reasonably accounts for the burdens he assumed, and implied acknowledgment of his own blame is not to be found. Exercise of his rights was no admission of wrong. Action on the face of it rightful cannot be found wrongful by conjectural assumption that it was inspired by malice and bad faith towards the plaintiff, and his efforts to settle the litigation and the marital troubles between the plaintiff and David give no implication of his own liability. Efforts to compromise litigation are incompetent to show liability, and it is assumed that the evidence relating thereto was limited to its use as admissions of particular facts made in the course of such efforts. *Jenness* v. *Jones*, 68 N. H. 475, 476, and cases cited.

David was well over age and Louis had no duty to support or establish him. Much less was he under such a duty to the plaintiff. In his affection for his son and parental interest for his welfare it was neither a wrong to the plaintiff nor an acknowledgment of wrong for him to say that his son might, but she might not, live in his home. *Servis* v. *Servis*, 172 N. Y. 438. While he had no right to take part in his wife's wrongdoing or to give her aid or counsel contributing thereto, he had the right not to interfere with her course of conduct, as well as the right, if the rights of others were not violated, to seek the peace and happiness of his home. And refusal to allow the plaintiff to remain or return as a member of the household was no violation of her rights. Nor may she complain if he regarded her unfavorably, even to the extent of animosity. So long as he avoided interference in the relations between her and David, he was not liable to her. His feelings towards her before the suit was brought were not enough to attach liability to his passive acceptance of the situation and failure to interfere in it. And after the suit was brought neither his feelings towards her nor his conduct were enough to show that he had wronged her. Opportunity may help to show, and motive may

serve to explain, conduct, but both together do not prove its wrongful character when other explanation is equally reasonable. There must be action in taking advantage of the opportunity under the inducement of the motive, and resulting in the injury. No such action is fairly to be inferred from the evidence considered in its details or collectively. So far as Louis' conduct affected the relations of the plaintiff and her husband, it was rightful. In no way did it tend to show wrongful interference with the relations. He did nothing inducing, or intended to bring about, the separation.

Evidence was received of statements made by Lena in a talk with David after the suit was brought. The defendants excepted to its admission. It was competent on two grounds. It was admissible under the rule that a party may introduce statements or conduct of his adversary which tend to refute the latter's position in the litigation. 2 Wig., Ev., s. 1048; *Masterson* v. *Railway, ante*, 190. It was also proper for its bearing on the issue of Lena's good or ill will towards the plaintiff. When a party's state of mind relates directly to the issues of a case, his statements and conduct are admissible if they help to show what his state of mind was. 3 Wig., Ev., ss. 1714, 1731. The evidence is on the same logical footing as evidence of intent held proper in *State* v. *Foster*, 80 N. H. 1, 4, where the fact that the statements were made after the occurrence of the wrongful conduct was no reason for their exclusion. The evidence here was of statements made after the suit was brought, but the party making them may not object to the evidence of them for that reason.

The objection that the statements had no tendency to show an admission by Lena or her attitude towards the plaintiff might be sustained if it were the only evidence relating to her feelings. But considered with other evidence, it was of value in showing her hostility towards the plaintiff, if not also to bear out the claim that David was under her domination.

A conversation between the plaintiff and David in which she expressed affection for him and complained against Lena was also properly admitted in evidence. It tended to show how she felt, what her attitude was, and how serious the alienation was. The objections that it took place after suit was begun and that it was of a self-serving character go to the weight and not to the competency of the evidence. *Hoxie* v. *Walker*, 75 N. H. 308. When mental pain is an issue, complaints of it are as competent to show it as complaints of physical pain when that is an issue.

In further support of the evidence, it was to be considered on the

issue of proximate cause. "Here the alleged utterances [or conduct] of the defendant need not be taken as facts, much less as true assertions [of such utterances] . . . , but the wife's reference to them is plainly evidential of the relation of cause and effect *in her mind* between her present alienation of affections and the defendant's influence, *i. e.* her motive . . . ; therefore, supposing that the fact of the defendant's efforts and influence is otherwise evidenced, the wife's utterances of the above sort should be received to show their result on her state of mind." 3 Wig., Ev., *s.* 1730.

If it was desired that the jury should not consider the evidence as proof of the truth of the plaintiff's charges of Lena's blame made in the conversation, an instruction so directing them should have been requested.

Evidence was offered of talks between the defendants and David as tending to show that they were trying to keep him and the plaintiff together and to avert a separation. On objection that the talks took place in the plaintiff's absence, and were hearsay and self-serving declarations, the evidence was excluded. The statement of the grounds of objection when the evidence was offered bars consideration of other grounds now presented. *Boyce* v. *Railroad,* 43 N. H. 627, 629; *Turner* v. *Company,* 75 N. H. 521, 525; *Bailey &c. Co.* v. *Railroad,* 78 N. H. 94, 98.

The alleged alienation was a main issue of the trial. In defence the defendants were entitled not only to deny conduct inducing alienation but to show conduct avoiding it. Neither the hearsay rule nor argument that the conduct "self-served" the defendants may be invoked to exclude such evidence. If the defendants advised and counseled David not to separate from his wife, evidence of the fact is as material to the issue as evidence of conduct inducing the separation. And not only may the fact of such advice and counsel be shown but its details and character are pertinent and of value on the issue as showing its force and sincerity or otherwise. Disproof is as readily and logically established by positive evidence of facts inconsistent with the charge as by mere denial of it. In *Hoxie* v. *Walker, supra,* proof of the defendant's ejection of the plaintiff's husband from her house, although after the suit was brought, was held admissible in disproof of the charge of alienation, and the self-serving character of the conduct was held to go merely to the weight of the evidence.

The hearsay rule is not involved. The question is not whether the defendants told David what was true but whether they told him not to leave his wife. The hearsay rule is designed to exclude as evi-

dence of a fact a statement of it made by a person not a witness at the trial where the evidence is offered, or outside of his testimony if such a witness. In the evidence here considered what the defendants said to David included no statement of what others had told them and the question of the admissibility of such a statement in such connection is not presented. Whether or not they alienated David's affections for the plaintiff was to be shown by their course of conduct. Such conduct would naturally consist chiefly of what they said to him about her and of the advice and counsel they gave him. Their statements and arguments for or against her would go far in settling the issue. As verbal acts the statements were more than a part of the *res gestae*, they were the *res gestae*. What the defendants said, if against the plaintiff, caused the alienation; if in her favor, they were not responsible for the alienation. The plaintiff's claim was that the conduct inducing alienation was not confined to a single instance but was a course of conduct maintained for practically the entire length of time she and David lived together, and evidence that the conduct tended to promote or induce maintenance rather than alienation of affection would tend to refute the claim. The plaintiff had the full right of cross-examination as to the truth or otherwise of the counsel and advice in her favor being given. The fact that it was not given in her presence does not bar the evidence of it. A similar situation is found in the parol appointment of an agent. Proof of such an agency by anyone a witness to it is no exception to the hearsay rule because the rule is not applicable to such oral acts.

Nor is the argument that the evidence was of a self-serving character available. In all trials evidence of conduct of a party which is in his favor on the issues is admitted without question and the fact that it "self serves" him is no reason for its exclusion. Otherwise trials would obviously be greatly limited and evidence of rightful conduct to meet the charge of conduct that was wrongful would be excluded. While evidence of one's conduct and statements is to be excluded in many situations, it is by reason of some other rule than one which bars evidence because it is of a self-serving character. That it is of such character may be an argument in support of the validity and soundness of the rule, but it is not the rule itself.

While in many cases it is pronounced that there is a general rule "which precludes a party from supporting his cause by giving evidence of his own sayings" (*Barker* v. *Barker*, 16 N. H. 333, 339), as a rule it is merely a part of, and embraced within, the hearsay rule. The fact that the statements which it bars have a self-serving quality and in-

vite suspicion of "manufacturing" evidence strengthens the argument for their exclusion. But if made by a third person, they would also be inadmissible, and the proposition in analysis is only an additional reason in giving merit to the hearsay rule in certain instances. It refers to extra-judicial declarations made by a party. But the hearsay rule, subject to its exceptions, excludes all such declarations, whatever their source. "There is no principle of Evidence especially excluding 'self-serving' statements by an accused or by any one else. The Hearsay rule excludes *all* extrajudicial assertions; and therefore the only inquiry need be whether such assertions are covered by some Exception to that rule, or whether utterances amenable to it are evidential in any indirect way apart from their assertive value." 3 Wig., Ev., *s.* 1765. The evidence here excluded was competent, not as an exception to the hearsay rule, but because of its admissibility under principles not affected by the rule.

On a subsidiary ground the evidence was also admissible as showing the state of mind and feeling of the defendants towards the plaintiff. Their attitude towards her might be shown by their declarations in the same way as hers towards them and David might be shown by her declarations. Such evidence has already been considered and requires no further discussion.

*Judgment for defendant Louis: new trial for defendant Lena.*

All concurred.