MRS. F. S. JOHNSON, ADMINISTRATRIX OF THE ESTATE OF F. S. JOHNSON, DECEASED, RESPONDENT, v. GUY A. THOMPSON, TRUSTEE OF THE MISSOURI PACIFIC RAILWAY COMPANY, A CORPORATION, APPELLANT. —236 S. W. (2) 1.

Springfield Court of Appeals.   Opinion delivered December 5, 1950.

*Thomas J. Cole* and *E. A. Barbour, Jr.,* for appellant.

1012

*Jo B. Gardner* for respondent.

McDOWELL, J.—This is an action by plaintiff, Administratrix of the estate of her deceased husband, F. S. Johnson, for damages for the wrongful discharge of deceased, a conductor, from his employment.

The action was brought in the Circuit Court of Lawrence County, Missouri, July 20th, 1949, by F. S. Johnson. Plaintiff died September 1st, 1949, and the action was revived in the name of Mrs. F. S. Johnson, Administratrix of plaintiff's estate, who filed an amended petition. A jury trial resulted in judgment for plaintiff for $7,000.00, and from this judgment defendant appealed.

The amended petition states there was a contract between the defendant and the Union, of which plaintiff's intestate was a member, entitled, "Schedule of Wages, Conductors", which was a part of the contract of employment under which plaintiff's intestate worked for defendant at the time of his discharge from said employment June 12th, 1948.

Said petition states that plaintiff's deceased husband reported for duty June 12th, 1948, on an assignment as conductor on defendant's train No. 15, at Union Station, St. Louis, Missouri, and that he was relieved from his assignment by V. A. Gordon, Assistant Superintendent of defendant; that on June 29th, 1948, a formal investigation was had on a charge that her deceased husband reported for duty while under the influence of intoxicants and unfit for service and that, thereafter, was discharged from his employment with defendant for alleged violation of Rules G-700 - 703.

The petition states that Article 54 of said "Schedule of Wages, Conductors" provided that a conductor may be discharged from the service of the company for good and sufficient causes; that Article 55 of said "Schedule of Wages, Conductors" provides that before a conductor is discharged for an alleged fault he shall have a fair and impartial trial.

The petition then pleads that plaintiff's husband was discharged from said employment without good and sufficient cause and without a fair and impartial trial; that her said husband did not violate the rules of said contract, and, if he did, such violation was not a sufficient cause for dismissal.

The petition asks for damages for the breach of the employment contract in the sum of $8,109.82.

The defendant's answer to plaintiff's amended petition admits the employment contract as stated in the petition and admits the provisions of Articles 54 and 55 of said "Schedule of Wages, Conductors" are as pleaded in the petition.

The answer admits the discharge of plaintiff's deceased husband as pleaded but denies that the discharge was the result of prejudice, unlawful or without good or sufficient cause and denies that plaintiff's husband did not have a fair and impartial trial.

Section 7 of the answer is as follows:

"Alleges that on June 12th, 1948, and for a long time prior thereto, there was in force and effect General Rule G of the Uniform Code of Operation Rules of defendant, provided as follows:

" 'G. The use of intoxicants or narcotics is prohibited.'

"Also under 'General Regulation', there were rules 700 and 703, which provide respectively as follows:

" '700. Constant presence of mind to insure safety to themselves and others, is the primary duty of all employees.

" 'In furtherance of the objects of several Federal and State Hours of Service laws, employes affected by such laws are prohibited from using their time while off duty in a manner that may unfit them for the safe, prompt and efficient performance of their respective duties for the railroad. They are strictly enjoined and required to use their time off duty primarily for obtaining ample rest.' "

" '703. Employes must be alert, devote themselves exclusively to the service, give their undivided attention to their duties during prescribed hours, reside wherever required, and obey promptly instructions from the proper authority in matters pertaining to their respective branches of the service.'

"Defendant alleges that plaintiff's husband was familiar with the forgoing rules, was subject thereto, and that on June 12th, 1948, plaintiff's husband was in violation of said rules when shortly prior to reporting for or performing the duties as 'conductor on one of defendant's trains at Union Station, St. Louis, Missouri, and was discharged therefor.''

The answer then pleads that when plaintiff's deceased husband was discharged and, prior to the institution of this suit, he did not exhaust his administrative remedies granted him under Railway Labor Act and did not exhaust his rights of appeal to his superior officer as provided in the contract known as "Conductor's Schedule", and for that reason had no right to maintain this action.

Plaintiff offered in evidence Articles 54 and 55 of the contract known as "Schedule of Wages, Conductors", which are as follows:

"Article 54. Suspension and Discharge.

"Any conductor may be suspended from duty for a reasonable time, or for investigation of any alleged misconduct, or for violation of rules or orders, and may be discharged from the service of the Company for good and sufficient causes. These causes shall include intemperance, incompetency, habitual neglect of duty, gross violation of rules or orders, dishonesty or insubordination. For any of these causes they

may be suspended by the Trainmaster and discharged by the Superintendent."

"Article 55. Investigations.

"Before a conductor is discharged, or suspended for a definite term, or notation is made against his record, for alleged fault, he shall have a fair and impartial trial, at which he may have a conductor of his choice, selected from the Company's service to represent him, who will be permitted to examine witnesses. He or his representative shall be furnished with a copy of the evidence brought out at such investigation, which will be the basis for the discipline administered. When suspended for investigation, such investigation shall be held within five days. If found innocent, he shall be paid at regular rates for time lost and reinstated. If detained more than five days awaiting investigation, he shall be paid for extra time in excess of five days, whether found guilty or not. When a notation is entered against the record of a conductor he will be furnished a copy and will receipt for it. If the notation against his record is decided to be unjust it will be eliminated."

Plaintiff offered in evidence a service certificate which showed that he had been working for defendant as brakeman from February 18th, 1924, to August 24th, 1924, and as conductor from August 24th, 1924, to July 2nd, 1948. This certificate contains a clause, "Cause of Leaving: Violation of Rules 'G', 700 and 703, on train No. 15, June 12, 1948."

There was offered in evidence a letter from defendant-company contained in answer to interrogatories as follows:

"Eastern

Kansas City Mo. July 2 48

"Mr. F. S. Johnson'
Conductor
St. Louis, Mo.

You are dismissed from the service for violation of Rules 'G' 700 and 703 on train No. 16 June 12, 1948.

Dismissed

| | |
|---|---|
| C. F. Dougherty, Supt. | (Signed) C. F. Dougherty |
| Kansas City, Mo. | Superintendent. |
| | Conductor." |

The evidence is undisputed that F. S. Johnson, deceased, was employed by the defendant as conductor when discharged; that the contract between the Union, of which deceased was a member, and defendant was a part of the contract of employment made with Johnson.

It is undisputed that deceased Johnson reported for duty as conductor for assignment on train No. 15, which was set on track No. 9, in Union Station, St. Louis, Missouri, on June 12th, 1948; that this train consisted of ten or eleven cars with destination at Kansas City

and carried between 130 and 150 passengers. It is undisputed that V. A. Gordon, Assistant Superintendent of defendant-company, relieved Johnson from his duty as conductor on said train about 1:30 P. M., and took from him the train orders because Johnson had reported for duty under influence of intoxicants and unfit for service.

It is undisputed that a formal investigation was set for June 15th, but said date was postponed because of sickness of Johnson until June 29th, 1948, when it was held before E. M. Bishop, Trainmaster for defendant-company.

Plaintiff's evidence shows that the charge investigated was for reporting for duty while under the influence of intoxicants and unfit for service; that there were present at the date of the investigation the deceased F. S. Johnson, who was represented by conductor George R. Ogletree; that E. M. Bishop conducted the investigation and asked questions relating to the charge and that Mr. Ogletree asked questions in behalf of the deceased.

The evidence shows that there were no objections made by the deceased to the fairness of the investigation; that the company used two witnesses, both of them officers of the railroad, and Mr. Johnson testified in his own behalf. The testimony shows that a copy of this hearing was mailed to C. F. Dougherty, Superintendent of the Railroad, whose office was in Kansas City, and that, in pursuance to this investigation, Dougherty sent a letter of final discharge to the deceased Johnson. This letter of discharge stated the reason was because of the deceased's violation of rules G - 700 - 703.

Ogletree testified that he had known deceased Johnson for twenty-five years and had worked with him; that he knew Johnson had been injured while working on a freight train for defendant in August, 1947; that he had heard Johnson on many different occasions, for a period from about five months after the injury to the date of his discharge, complain of pains in his head and neck and of having dizzy spells and that he had observed Johnson's walking and noticed that he staggered and weaved, which, Johnson stated, was because of his injury.

Plaintiff's evidence shows that Johnson took medicine to relieve him from the pain and dizziness which resulted from his injury while working for defendant, among which were aspirin, imdrin and amatol tablets.

Ogletree testified that he represented deceased Johnson in trying to get him reinstated with the defendant-company after his discharge; that he talked to Bishop who said, "no"; that he carried the matter to Kansas City and that, in a discussion with one of the railroad representatives, a Mr. Roll, he was informed by him that he would not consider the case unless he could get the recommendation of Bishop and Dougherty, which he could not get.

The court permitted the witness to testify about what Mr. Johnson stated at the trial as follows:

"Q. Now Mr. Johnson denied the charge there at the hearing did he not?" This was objected to by defendant on the grounds of hearsay but was, by the court, overruled and the witness gave this answer: "A. He did deny being intoxicated."

This witness testified there was nothing about Mr. Johnson's health that would prevent him from having been restored to his duties as conductor. There was a report of personal injuries to employees, introduced in evidence, showing that the deceased Johnson was injured while working on a freight train for defendant on August 23rd, 1947, as conductor. In this report his injuries were described, "Shock, bad lick on neck and back of head."

Plaintiff, wife of the deceased, testified that her husband died September 1st, 1949, and was 61 years old; that he was sick only about a week and a half or two weeks. She stated that outside of this illness the deceased's health had been about the same all the time since his discharge as it was at the time of the discharge. She testified deceased was injured in 1947, while working for defendant, as conductor, on a freight train; that after this injury he continually complained of having a hurting in the back of his head and neck; that he couldn't sleep and that he had dizzy spells. She stated these dizzy spells affected his walking when he would get up; that he would stagger and weave for a few minutes and then be all right. She stated that he had them at times and at times he did not have these dizzy spells but she stated he would work even if he were half dead. She testified deceased took tablets or medicine for the pain and dizzy spells. She testified that, after deceased's discharge, he tried to get restored to his former employment.

The plaintiff testified that on the morning of June 12th, 1948, the date he was relieved from his employment, deceased complained of pain and ate no breakfast. She stated his head hurt him and he felt dizzy but that he ate a sandwich before he left. She gave this testimony:

"Q. Did Mr. Johnson have any liquor, beer or wine? A. Not to my knowledge.

"Q. When he left, he hadn't had? A. No."

The evidence shows that deceased Johnson did do some little work at other jobs after his discharge but that he did not earn sufficient money to pay costs while so working.

Plaintiff introduced answers to certain interrogatories given by the defendant which showed that the gross wages made by conductor, junior to F. S. Johnson, from June 12th, 1948, to July 20th, 1949, was $7,474.69; that the net was $5,875.92; that the gross wages made by conductor, junior to F. S. Johnson, from June 12th, 1948, to September 1st, 1949, was $8,109.82, net wages for said time was $6,347.67.

Three witnesses testified in behalf of the defendant. J. L. Teckenbrock, Trainmaster, in charge of St. Louis Terminal Division, testified that on June 12th, 1948, about 12:45 P. M., while inspecting the train, he discovered deceased Johnson in the second car to the head coach; that he asked Johnson a question and Johnson's answer was a mumble which caused him to think there was something wrong; that Johnson followed him out on the platform and walked with unsteady step or stagger across to a steel brace on the platform to steady himself; that Johnson started to walk to the head of the train, when he called to him and asked what was the matter; that Johnson said he was all right and was going out on the train and accused the witness of picking on him. This witness testified that he smelled the odor of liquor on Johnson's breath; that he called V. A. Gordon, Assistant Superintendent and told him that Johnson was under the influence of intoxicants and unfit to go out; that Gordon came to the station about 1:30 P. M. and met him near the gate, about 100 feet west of the telegraph office. He stated that deceased Johnson was in the telegraph office, getting his orders when Gordon arrived; that about five minutes thereafter Johnson came out of the telegraph office and started to his train; that he walked about 100 feet west to where he and Gordon were standing; that Gordon called to Johnson twice before he came up to them; that Gordon relieved Johnson from his assignment as conductor and took his orders. He stated, at that time, he smelled the odor of whiskey on Johnson's breath and that Johnson staggered and weaved as he walked toward him. This testimony was corroborated by V. A. Gordon.

Gordon testified that he smelled whiskey on the breath of Johnson and that when he relieved Johnson from his service, Johnson said to him, ''You are making a mistake,'' and Gordon said that if they were they would pay him. It was on this testimony that the deceased was discharged.

Defendant's testimony showed that the passenger train on which deceased was assigned, on the day of discharge, consisted of ten or eleven cars, which carried about 130 or 150 passengers and operated between St. Louis and Kansas City, a distance of about 278 miles; that many stops were made in the journey.

In this opinion we will refer to the appellant as defendant and to the respondent as plaintiff.

The only issue to decide in this case, under the pleadings and the evidence is, was the deceased, F. S. Johnson, discharged from his employment with defendant without a good and sufficient cause.

The petition stated two alleged breaches of contract, the second being that the deceased was discharged without having been given a fair and impartial trial as provided by the contract of employment. This issue was not submitted to the jury by the court and, therefore, is not before us.

Defendant's first assignment of error is that the trial court erred in not sustaining defendant's motion for a directed verdict at the close of plaintiff's testimony and at the close of all the testimony because there was no evidence of probative force that plaintiff's husband was wrongfully discharged from employment by defendant.

We cannot agree with this contention.

The law governing the sufficiency of evidence is very ably stated in Ford v. Louisville & N. R. Co. (Mo. Sup.) 196 S. W. 2d 163, 167.

" 'It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.' "

The same rule has been stated in different language by our courts in numerous opinions. We generally say that where there is substantial evidence to support the verdict it must stand.

In considering the sufficiency of the testimony, the evidence of the plaintiff is to be taken as true and all reasonable inferences that can be drawn therefrom and any evidence offered by the defendant that supports the plaintiff's case. Young v. Wheelock, (Mo. Sup.) 64 S. W. 2d 950.

In 56 C.J.S. page 87, Section 11, the law is thus stated:

"In an action by an employee against his employer for breach of the employment contract, the employee has the burden of proving every fact essential to his cause of action. The burden is on him to prove the making of a binding contract, and the essential terms thereof. * * * On the other hand, the employer has the burden of proving affirmative defenses."

The contract of employment was admitted in this case and the terms thereof, that is, that deceased was employed as conductor by defendant in continuous employment. Under the pleadings it was admitted that deceased was discharged from his employment June 12th, 1948, by the defendant, for alleged violation of its rules. Under interrogatories answered by defendant, evidence as to the loss of earnings was shown. The facts further offered by plaintiff show that the deceased offered to continue his employment but that such employment was refused. We think this evidence made a prima facie case. The justification of the discharge was affirmatively pleaded

in defendant's answer and the burden of establishing this defense was upon the defendant.

The authorities cited by defendant, under this assignment of error, correctly state the law but, in no way, conflict with our holding. Garner v. Drainage District No. I, Reformed (Mo. App.) 181 S. W. 587, 588; Watkins v. Bird-Sykes-Bunker Co. (Mo. App.) 16 S. W. 2d 38; White v. K. C. Public Service Co. (Mo. App.) 193 S. W. 2d 60; Carpenter v. Wabash Ry. Co. (Mo. Supp.) 71 S. W. 2d 1071. The rule stated in the last cited case, by the Supreme Court is, "Verdict of the jury cannot stand unless based on substantial evidence."

Defendant's second assignment of error complains that the trial court erred in allowing witness Ogletree to testify that the deceased at the hearing had denied that he was intoxicated and allowing the witness Ogletree to relate conversations which he had with Bishop, both at Union Station and with Bishop and others in Superintendent Roll's office.

The testimony given by witness Ogletree, first complained of, is as follows:

"Q. Now Mr. Johnson denied the charges at the hearing, did he not?" The defendant objected to this testimony on the ground of hearsay; the court overruled the objection and plaintiff's witness Ogletree answered, "A. He did deny being intoxicated."

This testimony was clearly inadmissible. In Tennison v. St. Louis-San Francisco Ry. Co. (Mo. Sup.) 228 S. W. 2d 718, 721, the court, passing upon a statement given in an investigation, such as the one in case at bar, stated the law thus:

"Plaintiff further argues that Foster's statement was not hearsay because the investigation was conducted by defendant and its officers had the right to examine him. The trouble with this contention is that it was not a proceeding before anyone authorized to administer an oath or with power to compel answers, which is essential to effective cross-examination. * * * We hold that this statement was hearsay and that it was not admissible under any exception to the hearsay rule."

The evidence offered in the case at bar, as above set out, likewise is clearly hearsay and is not admissible under any exceptions to the hearsay rule.

Under the issues to be decided in this case, this testimony was very important. The defense relies solely upon the issue that the deceased Johnson reported for duty as conductor on defendant railroad while under the influence of intoxicants and unfit for service. The proof, therefore, that defendant denied being intoxicated at the hearing was on the very issue to be decided in the case, and, therefore, constituted reversible error.

Defendant complains of error, committed by the trial court, because the court permitted Ogletree, plaintiff's witness, to relate a state-

ment made by Mr. Bishop, Trainmaster for defendant, who conducted the investigation of the charges against deceased Johnson, which occurred at Union Station on June 15th, when the investigation was continued. In this conversation the witness stated that Mr. Bishop gave the following statement: "Mr. Bishop said, 'We might as well put the facts on the table.' He said, 'Fred Johnson was intoxicated,' and he said—there could be just a little variation, I don't remember just the exact words—he said, 'I guess Fred is laying up drunk sobering up after this happened,' words to that extent."

This evidence was admissible on the issue made up by the pleadings that the deceased did not have a fair and impartial trial at the investigation.

The testimony complained of by this assignment of error, to wit, conversations which occurred in Mr. Roll's office in Kansas City, wherein plaintiff's witness testified that Mr. Roll stated he would not consider the reinstatement of deceased Johnson for services with the company unless the consent of Bishop and Dougherty could be obtained and that said officers refused to give their consent did have some probative value on the issue that deceased Johnson offered to return to work for defendant and was trying to get reinstated, therefore, was not reversible error.

Assignment of error No. III by the defendant is that the trial court was in error on the theory on which he tried the case. It complained the court held that a single violation of only one rule by plaintiff's husband was not sufficient grounds for discharge; that violation of rule "G" alone was insufficient unless at the same time plaintiff's husband, by violating rule "G", also was guilty of intemperance and incompetency, and that it took the violation of more than one rule at the same time to justify discharge; that violation of two rules at once constituted a gross violation and that the instructions were submitted on that theory.

With this contention we agree. Article 54 of the contract relied on states, "Any conductor may be * * * discharged from the service of the company for good and sufficient causes. These causes shall include intemperance, incompetency, habitual neglect of duty, gross violation of rules or orders, dishonesty or insubordination. * * *"

It is the duty of the court to interpret the rights of the parties under this contract of employment as a matter of law and to tell the jury what facts they should find in determining whether or not any of the causes mentioned in the contract had been shown by the defendant in its evidence.

In construing a written contract, it is the duty of the court to give to the words their clear and plain meaning. State v. Allen, (Mo. Sup.). 256 S. W. 737.

It will be noted in this case that the affirmative defense pleaded is that the deceased Johnson reported for duty as conductor on

defendant's train while under the influence of intoxicants and unfit for service and, for that reason, defendant discharged deceased and stated in the notice of discharge that it was for violation of its rules G-700 - 703, which were a part of the contract of employment.

Now, if there were no dispute as to the facts that the deceased did report for duty while under the influence of intoxicants and unfit for duty, it would clearly be the province of the court to have determined, under the issue of whether or not deceased was discharged for good and sufficient causes, if the reporting for duty under the influence of intoxicants and unfit for service constituted one of the grounds stated in the contract under the term 'good and sufficient causes,' that is, did it constitute intemperance, or incompetency, or habitual neglect of duty, or gross violation of rules or orders, dishonesty or insubordination. If it did constitute any one of these grounds, then the deceased was discharged for good and sufficient reasons and defendant would not be liable.

We cannot agree with the trial court that the plain and ordinary meaning of the words used in this contract would require the violation of more than one rule to constitute a gross violation thereof.

It was no more reasonable to hold that, in order to constitute a gross violation of defendant's rules, he had to show more than the violation of one rule at the same time because the language used in the contract states that these causes shall include intemperance, etc., than it would say that the language which says that the deceased could be discharged from the company for good and sufficient causes meant that he had to show more than either of the terms set out as causes for discharge. In other words, the court might just as well have instructed the jury that before they could find that deceased had been discharged for good and sufficient causes, they must find from the evidence that the deceased was guilty of intemperance and incompetency or intemperance and habitual neglect of duty or intemperance and gross violation of rules or orders. This clearly was not the plain intent of the parties under the words of the contract.

We hold that this contract means that the deceased could be discharged if the evidence shows that he was guilty of intemperance, or guilty of incompetency, or guilty of habitual neglect of duty, or guilty of gross violation of any rule or order, which he was obligated to obey under the contract.

We hold that under the plain meaning of the contract a violation of any one of the causes so enumerated would constitute a valid ground for discharge of the deceased.

The phrase, "gross violation of rules," used in the contract, which refers to the duty that the deceased had in relation to his work means more than simple neglect; it means neglect of duty so glaring, flagrant, shameful or monstrous, under all the relevant facts of the case as to

1024

be obvious to the common understanding and inexcusable. 38 C.J.S. page 1083, note 14 and cases cited thereunder.

We hold that the court was in error in holding that it took a violation of more than one rule before deceased could be legally discharged or a violation of rule G, which constituted intemperance or incompetency. So holding, we find that this was reversible error.

Under assignment of error No. IV, defendant claims the trial court erred in giving Instruction No. I. This instruction reads as follows:

"The Court instructs the jury that it is admitted that the husband of plaintiff was discharged from the employ of defendant; and that the contract introduced in evidence was a part of the contract of employment under which plaintiff's husband worked for defendant. You are instructed that under such contract plaintiff's husband could only be discharged for good and sufficient causes. In considering whether the discharge of F. S. Johnson was for good and sufficient causes, you can only consider whether conductor Johnson violated defendant's rules G, 700 or 703 at, or prior to, the time he reported for duty or while performing his duties at the St. Louis union station on June 12, 1948.

"You are, therefore, instructed that:

"(1) If the defendant has not proven to you at this trial by the greater weight or preponderance of the credible evidence that deceased was guilty of violating defendant's rule G at such time and place and was therefore, if so, guilty of intemperance or incompetency, or

"(2) If the defendant has not proven to you at this trial by the greater weight or preponderance of the credible evidence that deceased was guilty of violating two or more of defendant's rules G, 700 and 703 at such time and place and that deceased was thereby, if so, guilty of a gross violation of defendant's rules; then,

"And in the event that you find that defendant has failed, if so, in proving either (1) or (2) above, your verdict may be for plaintiff and against the defendant."

We agree with the defendant that this instruction is erroneous. First, because the court erred in the law. We hold that under the plain interpretation of the contract the jury should have been told that, if it finds from the preponderance or greater weight of the testimony, deceased reported for duty while under the influence of intoxicants and unfit for service as a conductor on defendant's train, that that was gross violation of rule G which provides, "The use of intoxicants is prohibited," and the court should have instructed the jury that such facts, if shown by the preponderance or greater weight of the testimony by the defendant, would constitute a violation of rule 700; and that such facts would constitute a violation of rule 703. The jury should have been instructed that the defendant was only required to show gross violation of one rule or of either of the rules

pleaded in defense in order to show a justification for the discharge of the deceased. In other words, the jury should have been instructed what constituted gross violation or what facts the jury would have to find in order to justify the discharge under the term 'gross violation.' The only testimony offered by the defendant was to show that the deceased was under the influence of intoxicants and unfit for service and that constituted a gross violation of defendant's rules and, if it did not, the court should have sustained plaintiff's motion for a directed verdict because that was the only issue in the case.

It is a cardinal principle of law that the court shall instruct only on issues made by the pleadings and supported by the evidence.

The issue of intemperance has no evidence whatsoever to support it. Intemperance means the habitual, excessive use of intoxicants. Evans v. Modern Woodmen of America, 147 Mo. App. 155, 129 S. W. 485; Wild v. Pitcairn (Mo. Sup.) 149 S. W. 2d 800; Grosvener v. New York Cent. R. Co. (Mo. Sup.) 123 S. W. 2d 173.

There was no such issue in this case. The instruction might have submitted the question of incompetency if it had based the law upon the finding of facts which would cause its violation but the instruction, here, is so confusing as to be misleading to the jury. Again, we state that it was the duty of the court to have told the jury what the law was under the contract and then to have told the jury what fact was necessary to constitute such violation.

Under the first part of this instruction the jury would be precluded from finding that if defendant had shown that the deceased reported for duty under the influence of intoxicants and unfit for service that that would cause a gross violation of its rules, which is the law, and, therefore, the instruction does not properly declare the law.

That part of the instruction under (2) requires that the defendant show by a preponderance of the evidence that the deceased must have violated two or more of defendant's rules to constitute gross violation. This is not the law as above stated.

The whole instruction is bad for the reason that none of the terms used therein are defined. The court does not define the duties of the deceased under the admitted part of the contract, rule G and rules 700 and 703, and it does not tell the jury what facts they shall find would constitute a breach of these duties. It leaves the jury to guess and speculate what the law is and what would constitute a breach thereof. The instruction does not properly declare the law. We hold it is erroneous.

In 56 C.J.S. page 461, the law is stated:

"What constitutes a good and sufficient cause for the discharge of the employee is a question of law, and, where the facts are undisputed, it is for the court to say whether the discharge was justified. Where, however, the facts are disputed, it is for the jury to say on all the evidence whether there were sufficient grounds to warrant the dis-

charge. * * * Nevertheless, the courts will not permit juries to guess or speculate when from the undisputed evidence it is apparent that the order of the employer was reasonable and that the employee was guilty of insubordination.''

Under ''Instructions'', 56 C.J.S., page 463, Section 55, the law is declared:

''Each party in an action for wrongful discharge is entitled to instructions covering his theory of the case, the instructions must conform, and be confined, to the issues made by the evidence, and must correctly state the law applicable to the facts. When the court instructs on what state of facts the verdict must be returned against defendant, the instructions must include all the facts material to the right of such party. Where justification for the discharge has been urged in defense of the action, the court should instruct as to what amounts to legal justification, leaving to the jury to determine from the facts whether such justification existed.''

Instruction No. I violates, in our opinion, almost every section of the law as thus stated. It improperly defines the duties of the parties under the contract. It does not give the jury any measure by which they might determine whether or not the defendant was justified in discharging the deceased, if the jury found that the deceased reported for duty under the influence of intoxicants and unfit for service. It does not interpret the duty of the parties under that part of the written contract pleaded in defense, that is, that the deceased was in violation of defendant's rule G-700 and 703. It permits the jury to guess or speculate as to what evidence would constitute a defense.

Defendant complains of error in the giving of instruction No. 2 under assignment V.

We agree that this instruction is erroneous, first, because it submits issues not justified under the evidence, that is, it submits the issue of ''intemperance;'' secondly, because it improperly declares the law because it excludes the defense that if deceased was guilty under the evidence of the gross violation of rule G or rule 700 or rule 703, the discharge would be justified. In other words, it improperly presents the law of gross violation of defendant's rules under the contract. This instruction is subject to all of the objections made to instruction No. 1, that is, that it is confusing and leaves to the jury nothing but speculation and guess. This instruction is in conflict with instruction No. 7 given for the defendant. It will be noticed in instruction No. 7 that the jury is told if it finds from the evidence at the time deceased reported for duty, he did not possess constant presence of mind to insure safety to himself and others and if they found that, while he was off duty he used his time in a manner that made him unfit for safe, prompt and efficient performance of his duties as conductor and if it further found that he was not mentally or physically alert and had not devoted himself exclusively to his services

as conductor then the jury's verdict should be for the defendant. This instruction is so broad as to include the deceased's inability because of a former injury on a train of the defendant and, under this instruction, the jury might have found the facts required because of the dizzy spells shown in plaintiff's evidence. In other words, it was not limited to the only issue in the case and that is whether or not the deceased reported for duty under the influence of intoxicants and for that reason was unfit for service. We think this instruction is in conflict with all of the other instructions. Hamre v. Conger et al. (Mo. Sup.) 209 S. W. 2d 242; Mueller v. Schien (Mo. Sup.) 176 S. W. 2d 449; Scott et al. v. First National Bank in St. Louis (Mo. Sup.) 119 S. W. 2d 929.

Under assignment of error VI defendant complains of the giving of instruction No. 3.

In this instruction the court told the jury that the defendant had charged that the deceased had violated rules G, 700 and 703 at, or prior to, the time he reported for duty June 12th, 1948; that in this connection defendant could not discharge deceased for violation of its rule 700 or 703 alone. The instruction then states that if the defendant has only shown by credible evidence at this trial that conductor Johnson violated either its rules 700 or 703 and has shown no violation of its rule G, then the jury may find the discharge was wrongful. Under our holding the instruction is clearly erroneous in that under the plain meaning of the contract a gross violation of rule G or of either 700 or 703 would constitute a defense.

In assignment No. VII defendant complains of error in the giving of instruction No. 4.

Instruction 4 places the burden of proof on defendant to show that it discharged deceased F. S. Johnson for good and sufficient causes. We cannot agree with the contention of defendant. This was an affirmative defense pleaded in the answer of the defendant and the burden rests upon it to show by preponderance or greater weight of the testimony that the discharge was for good and sufficient causes.

56 C.J.S., page 454, Section 53, states the law:

"The employee establishes a prima facie case, however, by proving the contract, his performance thereof up to the time of his discharge, and the damage resulting from the discharge."

And under "Matters of Justification", 56 C. J. S., page 454, the law is stated:

"* * * as a general rule, where a servant enters on his duties and continues until he is dismissed, he need not prove that he performed his services faithfully, as a presumption arises that such is the fact, and the burden of proving a sufficient cause for his discharge is on the master, and this burden does not shift to the employee by reason of an allegation in his complaint that he was dismissed without good cause." Vernon v. Rife (Mo. App.) 294 S. W. 747; Maratta

v. Chas. H. Heer Dry Goods Co. (Mo. App.) 177 S. W. 718; Jones v. Schultz (Mo. App.) 295 S. W. 477.

Defendant complains in assignment of error No. VIII, that the giving of instruction No. 5 does not properly state the law pertaining. to damages. Instruction No. 5 tells the jury that if they find for plaintiff then, in assessing her damages it may consider the amount of wages her deceased husband would have earned, if any, had he not been discharged from defendant's employ.

In Jones v. Schultz, supra, the court states the measure of damages for wrongful discharge for breach of contract of employment as the price agreed on less sums employee earned or could have earned by the exercise of due diligence from the date of discharge to the end of the contract period.

It is true this instruction does not require the jury to find that the damages sustained to the deceased's estate would be measured by the contract price of his earnings lost because of the wrongful discharge from such services less any amount he might have earned or should have earned after his discharge, yet, under the evidence, it was not shown that there were any earnings and, therefore, we hold the instruction was not erroneous.

Defendant's last assignment of error, No. IX, complains that the trial court erred in requiring him to add to instruction No. VII, given in behalf of the defendant, the words, "and was thereby, if so, guilty of intemperance and incompetency."

Under our ruling as to the meaning of the written contract, sued on, the trial court did not properly declare the law in any of the instructions, excepting upon damages, therefore,. this instruction was made erroneous by the adding of the words. It was also made erroneous because it was broader than the evidence, having submitted the question of intemperance.

Under points and authorities the plaintiff says, in assignment No. I, that under the law the action for wrongful discharge brought herein would lie. That is not an issue in the case. There is no doubt that this statement of law is correct.

Under assignment II, plaintiff states that the doctrine of .interpretation of a contract that the mention of one thing implies the exclusion of others applies. We need not pass upon this question. The trial court tried the case on that theory and the issues do not raise this question.

Assignment No. III states that Ogletree's testimony complained of in the assignments of error on the part of defendant, was properly admitted. We have passed upon the admission of this testimony.

Under assignment IV, plaintiff states that instructions No. I and II, given by the court, were proper. With this contention we cannot agree and we have pointed out why we hold the instructions bad.

It is the order and judgment of the court that the cause be reversed﹥ and remanded. *Vandeventer, P. J.,* and *Blair, J.,* concur.