William **MITCHELL**, Appellant,

v.

G. Wilse **ROBINSON**, Jr., et al., Respondents.

No. 49123.

Supreme Court of Missouri,

Division No. 2.

Sept. 10, 1962.

Motion for Rehearing and for Transfer to
Court En Banc Denied Oct. 8, 1962.

Arthur C. Popham, Kansas City, for appellant, Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel.

John R. Gibson, William V. North, Morrison, Hecker, Cozad & Morrison, Kansas City, for respondents.

BOHLING, Commissioner.

This is the second appeal in an action for malpractice by William Mitchell against Doctor G. Wilse Robinson, Jr., and his associates, a partnership doing business as Robinson and Robinson, and operating a Neurological Hospital in Kansas City, Missouri. Plaintiff asked $40,000 damages, and the instant trial resulted in a verdict and judgment for the defendants. A judgment for plaintiff of $15,000 on a former trial was reversed and remanded because of trial errors. See Mitchell v. Robinson, Mo., 334 S.W.2d 11, 79 A.L.R.2d 1017. The sole issue plaintiff now presents is the admissibility of certain evidence hereinafter set forth.

The parties agree that the facts in the former trial appear in detail in our opinion on that review, and refer thereto. Plaintiff has filed an abbreviated transcript on this appeal, which shows the pleadings upon which the case went to trial; the questioned evidence adduced by defendant; the unanimous verdict for the defendant; the judgment and the usual after-trial proceedings. Defendant also filed an abbreviated supplemental transcript of certain evidence. We refer to the facts in our former opinion but outline certain facts here, quoting in part from our former opinion.

"Mitchell had 'a rather severe emotional illness,' process schizophrenia, but he was not mentally incompetent; his illness was characterized by serious depression and rather severe anxiety, complicated by alcoholism. * * * [I]t was the opinion of the doctors that he should have 'combined electro-shock and insulin subcoma therapy.' * * * One of the unpredictable results of insulin shock, however, is an unpreventable convulsion and one of the hazards of convulsions, whether from insulin or electroshock, is fractured vertebrae, fractured legs and various other injuries." (334 S.W.2d 12.)

With the plaintiff explicitly denying and the doctors affirming that they advised the plaintiff of the hazards of shock therapy, we held on the former appeal that "there was a submissible fact issue of whether the doctors were negligent in failing to inform him [Mitchell] of the dangers of shock therapy." (334 S.W.2d 17–19 [6, 7].)

Mitchell and defendant Dr. DeMott were well acquainted. Dr. DeMott was a specialist in neurology and psychiatry. On the morning of October 20, 1961, Mitchell talked with Dr. DeMott at the Neurological Hospital. Dr. DeMott testified he had Mitchell bring the then Mrs. Mitchell to the hospital; that when Mitchell returned with Mrs. Mitchell he described the electroshock treatment, the insulin treatment, and the possible complications, including the danger of fractures, in detail to them; that he did not ask Mitchell to sign a "consent" or "treatment permit" because Mitchell was in no emotional state at that time to sign anything; that Mitchell gave witness his verbal consent to the treatment, and that Mrs. Mitchell, "in front of Mr. Mitchell," signed the following "consent," dated October 20, 1951: "This is to certify that I have been informed of the possible dangers of the shock treatment with curare and electroshock, or metrezol, or with insulin in the case of William Mitchell and that I hereby give permission to the Neurological Hospital and staff to administer this treatment and request that this be done. We assume responsibility for any complications or accident resulting from the administration of these treatments."

Mitchell entered the hospital on October 20th for examination, tests and observations. On October 24th Dr. G. Wilse Robinson, Jr., had a conference with Mitchell at which Dr. DeMott was present. Dr. Robinson informed Mitchell of the electroshock and insulin treatments and of their possible complications, including the possibility of fractures, compressions of the spine, and possible memory defects. He testified Mitchell realized he was going into procedures that might cause serious side effects, but wanted to get better, to get

started, and consented to the treatments. Dr. DeMott further testified that in his opinion Mitchell's mental and emotional state at the time he entered the hospital was such that Mitchell would not in later years have an accurate memory of what took place.

Mitchell received his first electroshock treatment on October 25th and his first insulin shock treatment on October 28th. He suffered a convulsion with the treatment of October 31st, which particular treatment was successfully terminated by an intravenous injection of glucose. Insulin treatments were then reduced to 25 units but increased to 40 units on November 5th. On November 7th, with another insulin treatment of 40 units, Mitchell had " 'a hard generalized convulsion,' a grand mal seizure, which resulted in a compression fracture of the fifth, sixth and seventh dorsal vertebrae. It is to recover damages for these specific injuries that Mitchell instituted this action." (334 S.W.2d 12, 13.)

Mitchell did not sign a written consent to the treatment. He, however, gave his oral consent; "but, he says, he would not have consented had he been informed of the hazards. * * * Mitchell testified that he did not authorize his wife to sign the consent and that he never heard of it until long after he had been discharged from the hospital and therefore had no notice from the consent of the hazards of the treatment." (334 S.W.2d 17, and consult pp. 18, 19.) He testified that no member of his family, including his father, came to see him before the first electroshock treatment.

The questioned testimony on direct examination of Dr. DeMott related to a conversation he had with Mitchell's father, Mr. Harry Mitchell, on October 22nd, and is as follows:

"Q. When and where did that conversation take place? A. October 22nd, Mr. Mitchell's father came and visited with him and I talked at great length with his father, went into all aspects of his illness

to the best of my knowledge, all aspects of treatments, including possible complications, results—

"Mr. Popham: Just a minute. That was apart from Bill?

"The Witness: That was apart from Bill.

"Mr. Popham: Of course, Your Honor, these people know that the father is dead and can't deny these statements. It's hearsay, out of the presence of Mr. Mitchell and certainly not binding upon him. I object to it.

"Mr. Gibson: It's what this doctor said, Your Honor.

"The Court: Overruled.

"Q. (By Mr. Gibson) You may further describe what you told Mr. Mitchell, if you will, Mr. Mitchell's father, or was that the substance of the conversation? A. It was a very, very thorough conference that we had, as it was quite difficult for Mr. Mitchell's father to accept the illness, and I had also known Mr. Mitchell all of my life, the father. But he accepted the things that I told him.

"Mr. Popham: Just a moment. Your Honor, I object to the statement that he accepted the things that he told him.

"The Court: Sustained.

"Mr. Popham: I ask that all of the statements with respect to the father be stricken out because the father is dead and not available as a witness, as the records show and as counsel well know, and because this is purely hearsay, not in the presence of the plaintiff, and could not be binding upon him.

"The Court: Overruled. But your objection is sustained as to the father accepting what the witness said.

"Q. (By Mr. Gibson) Is there anything else that you told the father at the time, Doctor, or does that conclude that part of your conversation? A. That concludes that."

Appellant's sole point in his brief is that the above statements, made in his absence, "were self-serving, in the nature of hearsay, not binding on plaintiff, and highly prejudicial." Many cases are cited. Respondents, among other things, state the issue that the statements were self-serving was not presented to the trial court and is not for review.

The following are representative of appellant's cases. In Fishback v. Prock, 311 Mo. 494, 279 S.W. 38, 42 [5], James E. Fishback orally promised defendant Mrs. Prock that if she and her husband would care for him as long as he lived he would give her his farm. Offers of proof by plaintiff that James E. Fishback, prior to his death but after making said contract, made statements to different parties out of the presence of the defendant that tended to show he never made said alleged agreement were properly excluded on the ground they were "self-serving declarations."

The precise holding in McCarty v. Bishop, 231 Mo.App. 604, 102 S.W.2d 126, 129 [6], as we read the case, does not aid appellant.

Shaw v. Terminal Rd. Ass'n, Mo., 344 S.W.2d 32, 34 [1], stressed by appellant, involved hearsay declarations of a deceased witness against defendant, and not self-serving statements of the plaintiff in that action.

Respondents do not contend that self-serving statements in the absence of an adversary are admissible, or are binding on the opposing party (McLean v. Rutherford, 8 Mo. 109, 114; North Missouri Rd. Co. v. Wheatley, 49 Mo. 136, cases cited by appellant). They do not question the rulings under the objections made to the hearsay statement in the Shaw case, supra, and the self-serving statements made in the absence of the opposing party, after the event in litigation, to prove specific facts about that event in the cases cited by appellant. Fishback, supra; Wallendorf v. Rensing, Mo., 329 S.W.2d 779, 783 [4]; Critcher v. Rudy Fick, Inc., Mo., 315 S.W.2d 421, 429 [13, 14]; Sander v. Callahan, Mo., 351 S.W.2d 691, 695 [3, 4]; Keeshan v. Embassy Investment Co., Mo.App., 303 S.W.2d 666, 669 [3]; Johnson v. Thompson, 241 Mo.App. 1008, 236 S.W.2d 1, 8 [9]; Weller v. Weaver, 231 Mo.App. 400, 100 S.W.2d 594, 597 [10].

Assuming, without so holding, that the questioned testimony was self-serving, the authorities sustain respondents' position that since said issue was not raised below it is not for review here. In Dunn v. Alton R. Co., Mo.App., 88 S.W.2d 224, 228 [1], the appellant contended on appeal that certain testimony was self-serving, its objection at the trial being that it was hearsay. The court said: "It now makes the further objection that such testimony was self-serving, but the lack of such objection at the trial precludes our consideration of it at this late stage of the proceeding." The same ruling is found in Hermann v. St. Louis Pub. Serv. Co., Mo.App., 345 S.W.2d 399, 405, 406, citing cases. "It is well settled that an objection to the admissibility of evidence must be specific and contain the proper ground of its exclusion, else the trial court will not be convicted of error for overruling it." Goodman v. Allen Cab Co., 360 Mo. 1094, 232 S.W.2d 535, 539 [3-5, 7]. See Williams v. St. Louis Pub. Service Co., Banc, 363 Mo. 625, 253 S.W.2d 97, 104 [9-11]. Any other course would open wide the door to reverse judgments on objections not presented below.

A respondent does not have the burden of establishing the correctness of a judgment. Lakin v. Postal Life & Cas. Ins. Co., Mo., 316 S.W.2d 542, 549 [3], 70 A.L.R.2d 564. "No appellate court shall reverse any judgment, unless it believes that error was committed by the trial court against the appellant, materially affecting the merits of the action." Sup.Ct.R. 83.13(b), V.A.M.R.; Section 512.160 RSMo 1959, V.A.M.S.; Schraedel v. St. Louis Pub. Service Co., Mo.App., 248 S.W.2d 25, 33 [8]. The appellant has the burden of establishing reversible error upon appeal. Hardy v. Mc-

Nary, Mo., 351 S.W.2d 17, 20 [2]; Sorrell v. Hudson, Mo., 335 S.W.2d 1, 6 [10]; Kelly v. Kansas City Pub. Service Co., Mo., 335 S.W.2d 159, 164 [8], citing cases.

Under respondents' evidence Dr. DeMott on October 20th informed appellant and his wife of the hazards of the electroshock and insulin treatments, appellant orally consenting and his wife signing a written consent for the treatments. On October 22nd, Dr. DeMott had the questioned talk with appellant's father. Appellant, in the hospital for examination, tests and observation, was again informed on October 24th of the hazards of the treatment, this time by Dr. Robinson, Jr., in the presence of Dr. De-Mott, and again consented and wanted to get started with the treatments. Thereafter, appellant received his first treatment on October 25th.

■■ Appellant's brief quotes statements from 31 C.J.S. Evidence § 216, p. 952, including: "The rule excluding self-serving declarations is a part of the hearsay rule," citing Caplan v. Caplan, 83 N.H. 318, 142 A. 121. Said § 216 also states: "Where there is direct evidence as to the same matters as to which a party's declaration has been admitted in evidence against the objection that it was self-serving, the admission of the declaration, even if technically improper, cannot be regarded as prejudicial error." (n. 42.)

Wilt v. Moody, Mo., 254 S.W.2d 15, 17 [1], an action involving a collision between automobiles, considered self-serving statements subsequently made by a defendant in the absence of his adversary part of the hearsay rule, also citing the Caplan case, supra.

The Caplan case, supra, an alienation of affections action by a wife against her husband's parents, considered that talks, verbal acts, between the two defendants and their son in plaintiff's absence in trying to avert the separation were part of the res gestae within the time involved, were not proof of the facts stated but were admissible to es-

tablish whether they tended to cause or avoid the separation, and held evidence of such talks was improperly excluded under an objection they were hearsay and self-serving (142 A. 1. c. 127 [25–34].) We need not develop respondents' citations to sustain their theory that the questioned testimony was a verbal act and admissible as part of the res gestae, among which are: Mash v. Missouri Pac. R. Co., Mo., 341 S. W.2d 822, 827 [4]; In re Thomasson's Estate, 347 Mo. 748, 148 S.W.2d 757, 763 [10, 11]; Trask v. Davis, Mo.App., 297 S.W.2d 792, 798 [13, 14], citing cases; 6 Wigmore, Evidence, 3d ed., §§ 1770, 1766.

With direct evidence of respondents informing appellant on two occasions of the dangers connected with the treatment, the sole issue in the case, self-serving statements to like effect have been regarded as not prejudicial. 31 C.J.S. Evidence § 216, n. 42, quoted supra; Wilmoth v. Hamilton, 3rd Cir., 127 F. 48, 50, 51, 61 C.C.A. 584; McCurtain Cotton Oil Co. v. Guthrie, 146 Okl. 144, 294 P. 133, 135; and see 5A C.J.S. Appeal and Error §§ 1729–1731.

■■ The sole fact issue for determination by the jury was whether the verbal acts of the respondents informed the appellant of the dangers of the treatments (334 S.W.2d 19), a simple and easily understandable issue. Dr. DeMott did not testify that he told appellant's father he had told appellant the treatments involved hazards of fractured vertebrae, legs and other injuries, and there is no showing in this record that the case was tried on the theory this questioned testimony was binding on appellant. If the questioned testimony was erroneously admitted the burden was on appellant to establish its prejudicial effect. It related to a matter which ought not materially affect the result, did not bring in the fact which would defeat a recovery by plaintiff on the fact issue for determination, and it is not demonstrable from the abbreviated abstract of the record how, with the evidence adduced by appellant and respondents in the case bearing directly on

the fact for determination, the jury was mislead in the contested issue for submission to them.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All of the Judges concur.